HARRY J. DIACOU et al., Plaintiffs-Appellees, v. PALOS STATE BANK et al., Defendants-Appellants.

(No. 60095;

First District (1st Division)—August 4, 1975.

*Rehearing denied September 10, 1975.*

Nicholas T. Kitsos and Jeffrey Schulman, both of Chicago, for appellants.

Sidley & Austin, of Chicago (Roger H. Dusberger, of counsel), for appellees.

Mr. JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the defendants from an order vacating a dismissal for want of prosecution.

On September 29, 1966, the plaintiffs, Harry J. Diacou and Violet Diacou, filed a two-count complaint in the chancery division of the circuit court of Cook County. The complaint alleged that the bank was given certain securities to hold as collateral for a loan made to the plaintiffs; that all the defendants made representations and agreements with the plaintiffs upon which the plaintiffs relied to their detriment; and that the bank wrongfully sold some of the securities. Count II was for money damages for the past sale of some of the securities and count I sought an injunction restraining the bank from further sale of securities or real estate held as collateral; the reacquisition of securities similar to those already sold by the bank; an accounting of any dividends and interest acquired from the sale of the securities; a reinstatement of the loans; a reasonable period for payment of the loans; and a determination of the propriety of a $5000 fee charged by the defendant law firm. On both counts the alleged wrongful conduct of the defendants was identical.

On September 29, 1966, the plaintiffs filed a motion for a temporary injunction seeking to restrain the bank from further sale of the plaintiffs' collateral. After five hearings the court denied the motion on July 12, 1967; and on August 22, 1967, the court authorized the bank to sell the remaining collateral.

Thereafter, several motions were filed by the plaintiffs seeking the return of surplus collateral and relief from certain charges made by the defendants. On March 29, 1968, the defendants filed a motion, which was denied, seeking dismissal of the post-hearing motions for want of equity and a transfer of count II to the law calendar. Amended motions by the plaintiffs for post-hearing relief were filed and continued on several occasions. After two hearings the plaintiffs' motions for post-hearing relief

were denied on September 22, 1969. The plaintiffs filed a notice of appeal from this order on October 17, 1969, and retained new attorneys. While their appeal, which was later dismissed by the plaintiffs, was pending, the plaintiffs' motion in the circuit court for an order transferring count II from the equity docket to the law docket was granted on June 12, 1970. The defendants moved to vacate the transfer order alleging that the court had heard all of the evidence relating to any wrongdoing on the part of the defendants and had resolved the issue against the plaintiffs; and that count II was barred on the ground of *res judicata*. Another motion of the defendants sought an order "finding the issues raised in count I and count II in favor of the defendants." On August 18, 1970, the court denied the motion to vacate the transfer order and held that no new order was necessary as to count I stating:

"Gentlemen, I have disposed of count I and all that remains of the chancery count is what is now before the appellate court. I ruled against the plaintiff as to the chancery portion of the complaint. I will not issue an injunction or give him any equitable relief requested in count I; however, count II is a separate law action which I did not hear and on which the plaintiff is entitled to have a trial before the law division of this court."

On July 21, 1971, the defendants moved the law division for an order dismissing count II on the ground of *res judicata*. That motion was denied. Shortly after, the plaintiffs' second attorney was granted leave to withdraw on February 23, 1972.

No notices, pleadings or other papers were filed or served until May 18, 1972, when the case was called for trial on the regular call of cases and dismissed for want of prosecution. Almost one year later, on May 9, 1973, the plaintiffs filed a petition pursuant to section 72 to vacate the dismissal. (Ill. Rev. Stat. 1973, ch. 110, par. 72.) On November 21, 1973, the court vacated the order of dismissal and reinstated the case. It is from that order that the defendants appeal.

The plaintiffs' petition stated that after the withdrawal of their second attorney on February 23, 1972, on February 28, they retained their third attorney, John R. Sullivan. The affidavits of Anne Sullivan, the wife of John R. Sullivan, and the plaintiffs were attached to the petition and established the following: John R. Sullivan suffered two strokes and was hospitalized five times in 1972; and at the time the petition was filed he was incapacitated and unable to carry on his law practice. On February 28, Harry Diacou conferred with Sullivan and paid $300. Sullivan took 11 pages of handwritten notes on March 31, 1972, from Harry Diacou and had an office appointment with him on September 7, 1972. During November, December and January, Anne Sullivan received telephone

calls from Harry Diacou but she could not locate any file or papers in her husband's office. In February, 1973, she found the file in her husband's briefcase in their new apartment to which they had moved on September 1, 1972. She checked the court file and docket and learned that the case had been dismissed on May 18, 1972. On February 8, she conferred with Harry Diacou. He first learned at that time that the case had been dismissed. She told him that due to her husband's illness he would be required to obtain another lawyer to represent him, and that *he must do so without delay.* On February 20, 1973, she received a call from Robert C. Slater, stating that he had a conference with Diacou and that he and attorney John P. Kelley wanted to examine the file but that they would be unavailable for about 2 weeks. On April 4, Slater telephoned her and told her that he and Kelley were still interested in the case but they would be busy until after April 15, due to income tax matters. On April 20, Slater picked up the file for examination.

The defendants filed a motion to dismiss the section 72 petition on two grounds: The plaintiffs had failed to exercise due diligence; and their claim was barred because the issue of the defendants' wrongful conduct had been adjudicated against the plaintiffs in the chancery action. The court, in allowing the motion to vacate the dismissal order, did not pass on the defendants' assertion that count I was barred by the doctrine of *res judicata.* The judge pointed out that the question could be raised with the judge to whom he was assigning the case for trial.

■■ The defendant again raises both arguments in this court. In our view, the response to a section 72 petition should not be turned into a motion to dismiss under section 48 of the Civil Practice Act ( Ill. Rev. Stat. 1973, ch. 110, par. 48), and the trial court correctly refused to pass on the question.

■■ Before 30 days has expired a party seeking to vacate a default judgment or an order of dismissal may proceed under section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 50(5)), but he must, as a general rule, establish diligence in the prosecution or defense of the claim. The rule is qualified to the extent that the post-judgment relief may be granted, even in the absence of the movant's diligence, if substantial justice is being done between the litigants and if it is reasonable, under the circumstances, to compel the other party to go to trial on the merits. (*People ex rel. Reid v. Adkins,* 48 Ill.2d 402, 270 N.E.2d 841.) But if more than 30 days has elapsed, the movant, again as a general rule, must establish some reasonable excuse for his failure to prosecute or defend the original claim; and he must also show that the presentation of the motion for post-judgment relief was timely; or, in other words,

he must show a reasonable excuse for failure to file the motion within 30 days. *Brockmeyer v. Duncan*, 18 Ill.2d 502, 165 N.E.2d 294.

■■ Insofar as the original claim is concerned, we believe the trial court was justified in concluding that Sullivan's serious illness constituted a reasonable excuse for failure to respond to the trial call and for the lapse of time up to February 8, 1973, when the plaintiffs first learned that the case had been dismissed. But we do not believe that the plaintiffs have established diligence in the presentation of the petition nor any overriding circumstances that would excuse their failure to present a timely petition.

The plaintiffs learned on February 8 that the case had been dismissed. Harry Diacou, the record shows, is a sophisticated businessman and no stranger to the courts. He had already retained three separate attorneys; had participated in the protracted chancery litigation over a 4-year period and tax foreclosure proceedings in the county division; and had retained Sullivan 5 days after the second attorney had withdrawn. The most important fact, however, is that Anne Sullivan, also an attorney, discharged her duty when she informed the plaintiff that he must obtain an attorney and that "it must be without delay." Thus, the plaintiffs knew or should have known that time was essential. Yet neither they nor their attorneys did anything until 3 months had elapsed. Under the circumstances, it was an unreasonably long period. *Mehr v. Dunbar Builders Corp.*, 7 Ill. App.3d 881, 883, 289 N.E.2d 25.

■■ We are aware that a section 72 petition invokes the equitable power of the court (*Elfman v. Evanston Bus Co.*, 27 Ill.2d 609, 613, 190 N.E.2d 348), but there is no allegation that the plaintiffs were misled by the defendants after February 8. Although we make no determination of the effect of the chancery order on the law complaint, it should be noted that the plaintiffs were given an opportunity to present any evidence to support a finding of wrongdoing on the part of the defendants. Under all the circumstances, therefore, we judge that the plaintiffs did not establish any excuse for the failure to exercise diligence in the presentation of the petition nor any grounds for the invocation of the court's equitable powers. For these reasons, the order is reversed.

Order reversed.

BURKE, P. J., and GOLDBERG, J., concur.