ITT THORP CORPORATION, Plaintiff-Appellant, *v.* MARY LOUISE HITESMAN, Defendant-Appellee.

Third District   No. 82—480

Opinion filed May 26, 1983.—Rehearing denied July 8, 1983.

David L. Cover, Ltd., of Peoria, for appellant.

Danny L. Schroeder, Jr., and Joseph F. Bartley, III, both of Bartley, Fraser, Parkhurst, Hession & Renner, of Peoria, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff ITT Thorp Corporation filed a complaint for foreclosure of a real estate mortgage against defendant Mary Louise Hitesman and other parties not germane to this appeal. After defendant failed to appear, plaintiff obtained a default judgment for foreclosure and sale. Thereafter defendant filed an answer to the original complaint and a motion to set aside the default judgment, which was granted. After the subsequent bench trial on the merits, the circuit court of Peoria County granted judgment in defendant's favor.

On December 4, 1980, defendant mortgaged certain properties to secure a loan from plaintiff. In June 1981, she was stricken with a

heart ailment and was thereafter unable to continue her employment. As a result of this, defendant was unable to make her monthly loan payments after September 1981. She thereafter contacted plaintiff to see if she could increase the term of the loan to lower her payments. Defendant was advised that increasing the term would not benefit her due to the amount of interest, and that plaintiff might be forced to commence a foreclosure action against her. On March 5, 1982, it did so.

Among the various instruments defendant admitted to signing on December 4, 1980, was an application for insurance and notice to loan applicant. By means of this instrument, a borrower was able to apply for credit disability, credit life, and property insurance. Defendant's application reflected her election to be covered by single decreasing credit life insurance. Near the top of the printed form appears the following in red letters:

> "INSTRUCTIONS: This request For Insurance Must Be Filled In And Signed BEFORE The Note Is Completed. *Applicant(s) Must Initial Appropriate Box If Insurance Is Requested.*" (Emphasis added.)

Accordingly, the box next to the elected life insurance was initialed. No other box was. Near the bottom of the form appears the printed statement "I [we] desire Credit Life Insurance," immediately below which is a line for a date and signature. On defendant's application, the date and her signature appear on this line. There are other such lines, including one above which appears on the printed statement "I desire Credit Disability Insurance." On defendant's application, none of these other lines are dated or signed.

In her answer and in her trial testimony, defendant responded that the mortgage and note in question were signed in blank and completed at a later time. As for the insurance application, defendant offered the following explanation on direct examination as an adverse witness:

> "Q. And it states here on the application then, that you are applying for single decreasing credit life with premium of $1625 for 120 months?
> A. Yes.
> Q. Or over ten years?
> A. He had me initial that.
>
> * * *
>
> Q. Also, I'd like to point out, there were other alternatives here where it says 'Credit Disability Insurance will cost,' that is all crossed out and then amount of monthly disability is crossed out. Do you recall that?

A. Being crossed out? No, sir, I don't.

Q. Then also further down, we have some signature lines here and below the signature where it says, 'I or we desire Credit Life Insurance,' then you signed that?

A. Yes, sir. As a transaction I had with him or anybody, I have always had disability insurance and credit life.

\* \* \*

Q. Well, now, down here where it says, 'I desire disability insurance,' there is a place to sign for this, and date it. That was not signed; is that correct?

A. It is dated 12-4-80.

Q. That is under the box where it says, 'I desire credit life insurance.' Could it have been that maybe you were just mistaken and you forgot to apply for credit?

A. No. I surely wouldn't jeopardize my home, no.

Q. But you knew enough to apply for credit life insurance, though, and you even applied for an additional life insurance.

A. They have never denied me disability insurance, and I was under the assumption that I would be totally covered."

On behalf of plaintiff, assistant manager Joney Pruss testified that corporate policy was that all forms must be completed before they are signed, and Nancy Remmert, a cashier, secretary, and notary public, testified that "[o]ur papers are always filled out." Neither of the witnesses to the transaction, the office manager and defendant's sister, were called to testify. The court found the documents were signed in blank and held in defendant's favor.

The first issue presented for our review is whether the trial court erred in vacating the default judgment for foreclosure and judicial sale. Plaintiff disputes defendant's claim that the court failed to obtain personal jurisdiction over her for want of proper service. While numerous arguments and counterarguments have been advanced by the parties regarding the propriety of service herein, we need consider but one.

■◢■ The trial court granted plaintiff leave to employ "Steven D. Logue and/or his agent" as a private process server in this cause. Abode service pursuant to section 13.2(1)(b) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 13.2(1)(b)) was effected by Robert E. Sorrells of S. D. Logue and Associates. Where personal jurisdiction is based on constructive service, strict compliance with every requirement of the statute must be shown. (*Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 427 N.E.2d 645; *Clinton Co. v. Eggleston* (1979), 78 Ill. App. 3d 552, 397 N.E.2d 183; *Bank of Ravenswood v. King* (1979), 70 Ill. App. 3d 908, 388 N.E.2d 998.) Section 13.1(1) of the Act (Ill. Rev.

Stat. 1979, ch. 110, par. 13.1(1)) provides, *inter alia*, that "[t]he court may, in its discretion upon motion, order service to be made by a private person over 18 years of age and not a party to the action." The statute confers upon the court the power to order service to be made by a "person," rather than persons, and the limiting language "over 18 years of age" implies a corporate entity is not contemplated. This latter conclusion is supported by the fact that when the General Assembly lowered the age of emancipation to 18, the statute was amended to reduce the minimum age of a private process server from 21 to that age. (See Ill. Ann. Stat., ch. 110, par. 2—202, Historical and Practice Notes, at 129 (Smith-Hurd 1983).) Nowhere in the statute is there a provision allowing the person ordered by the court to effect service to designate another person to fulfill this duty; yet Steven D. Logue designated Robert E. Sorrells to serve defendant. For the aforementioned reasons, we hold there was no strict compliance with the requirements of the statute, and the court did not, therefore, obtain personal jurisdiction over defendant in the default proceeding. This being the case, it did not err in vacating its judgment for foreclosure and judicial sale.

While any discussion of such would be beyond the parameters of our decision today, we are not unmindful of its potential ramifications and defer, in this regard, to the wisdom of the General Assembly.

■ The second issue we today address is whether the trial court erred in holding that the documents in question were improperly executed. While the judgment order in this cause does not indicate the basis for this ruling, the record reflects that the court found that the instruments had been signed in blank and/or were improperly notarized.

At the outset of our discussion of this issue, it should be noted that the only issue of fact raised by those pleadings addressed to merits of this cause is whether the documents in question were signed in blank. Both parties refer to section 3—115 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—115):

> "(1) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed. ***"

During the trial of this cause, defendant raised only one instance of the instruments in question not being completed in accordance with her authority. She testified unequivocally that she intended to apply for the credit disability insurance which apparently would have avoided her failure to make her monthly payments and this litigation. According to

her testimony, she first became aware she was not so insured when she was stricken with her heart condition in June 1981.

Section 3—115 of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—115) continues:

> "(2) If the completion is unauthorized the rules as to material alteration apply (Section 3—407), even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting."

Section 3—407 of the Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—407) provides:

> "(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect ***."

As previously indicated, all signing and initialing of the documents was done on December 4, 1980. Ten days later, defendant received her loan and her copies of the instruments, and no claim is made that they were then incomplete. Although she allegedly signed the documents in blank, defendant apparently did not review them at this time. Assuming, *arguendo*, that the insurance application was signed in blank and later the cost, term, and amount of monthly disability were not inserted, and in fact had lines across the places for insertion of those figures, is of no moment. The form itself was printed and, even if blank, contained the previously discussed provisions. In spite of the need to sign and date the request for the omitted insurance and in spite of the red-lettered instruction to initial the appropriate box, defendant neither signed nor initialed where required. Thus, the provisions in question did not come into play. This being the case, the contract could not have been changed and thus no material alteration is involved.

As to any improper notarization, the application contains no provision requiring nor space for notarizing the instrument, and we are not aware that such is required. As to any other instrument, no claim is made that they were completed except as authorized by defendant. We therefore hold the trial court erred in holding that the instruments in question were improperly executed.

Accordingly, the judgment of the circuit court of Peoria County is affirmed in part, reversed in part, and remanded for further proceedings consistent with the views herein.

Reversed in part and remanded.

BARRY and SCOTT, JJ., concur.