SCOTT STERNE, d/b/a Sterne Concrete Construction, Plaintiff-Appellee, v. RANDY FORREST, Defendant-Appellant.

Second District   No. 84—0517

Opinion filed July 10, 1986.—Rehearing denied August 15, 1986.

Robert L. Marsh, of Wheaton, for appellant.

Thomas Swabowski, of Barclay, Damisch & Sinson, of Chicago, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

The defendant, Randy Forrest, appeals from the default judgment entered against him and from successive denials of his motions to vacate the default judgment for improper service of summons.

The plaintiff, Scott Sterne, doing business as Sterne Concrete Construction, brought a breach of contract action against the defendant, Randy Forrest, seeking damages of $19,259.64, plus costs, interest and reasonable attorney fees. The complaint was filed on April 7, 1982, and on May 11, 1982, plaintiff issued an alias summons against defendant. The sheriff's return of service by Deputy J. Sisco indicates that on May 14, 1982, at 8:05 p.m., he served defendant by abode ser-

vice on "Carl Pedersen, Roommate" at 29 W 381 Garden Drive, Bartlett, Illinois. No appearance or answer was thereafter filed on behalf of defendant. On August 9, 1982, the trial court entered an order of default, and on August 16, 1982, it entered judgment against defendant in the amount of $19,259.64. On August 25, 1982, plaintiff sent notice of the default judgment to defendant at the Garden Drive address. A wage-deduction summons was served upon defendant's employer on January 13, 1983.

On February 9, 1983, defendant filed a motion to quash service of summons and to vacate the default judgment, with a supporting affidavit, stating that on or about the date of service of the alias summons, defendant resided at 2832 West Ainslie in Chicago. He stated that at no relevant time was 29 W 381 Garden Drive in Bartlett his usual place of abode, that Carl Pedersen was not defendant's roommate but was a tenant of defendant on a month-to-month basis, that the purported service of summons was thereby improper, and that defendant had no knowledge of the proceedings against him until November 18, 1982, when he was served with a copy of the judgment order by the sheriff of Du Page County.

A hearing was held on December 28, 1983, on the question of the validity of the service of summons. The defendant presented three witnesses. Carl Pedersen testified that he rented the residence at 29 W 381 Garden Drive in Bartlett from defendant beginning in early April 1982. They entered into a verbal agreement wherein Pedersen rented on a month-to-month basis. The rent was $450 per month including utilities, and the utilities were in defendant's name. Mark Edwards moved into the house shortly before Pedersen, and he moved out in mid-May, sometime after May 13. Pedersen moved out of the house in October 1982. Defendant claimed he did not occupy the premises with Pedersen at any time.

Pedersen further testified that on May 13, 1982, a deputy from the Du Page County sheriff's department came to the house and asked if it was the Forrest residence; Pedersen responded, "yes, he own[s] the residence." The deputy then asked if Mr. Forrest was home, to which Pedersen responded in the negative. Pedersen told the deputy that he "was renting the house with a roommate from Mr. Forrest." The deputy then asked Pedersen his name, handed him a legal document, and asked him to deliver it to defendant. Pedersen put the papers on his desk. Later that evening he looked them over and tried unsuccessfully to reach defendant's mother by phone. The next morning Pedersen called the sheriff's department, and thereafter mailed the papers back to the sheriff. Pedersen saw defendant ap-

proximately three times from April to October of 1982, but he never told him about the papers.

Defendant's mother, Lorraine Forrest, testified that she resides at 2832 West Ainslie in Chicago in the basement apartment and that in 1982 her mother resided in the first-floor apartment. In late March 1982, defendant moved into the first-floor apartment with his grandmother, who was terminally ill with cancer. Defendant had previously resided with his grandmother from 1965 to 1977, when he got married. When defendant moved into the premises in 1982, he brought with him his clothing and personal effects, but no furniture or other items. Mrs. Forrest had observed mail being addressed to defendant at the Ainslie address during his stay there. The grandmother died in August 1982, and defendant moved out of the house in November 1982.

On cross-examination Mrs. Forrest testified that she was the owner of Forrest Builders and that several months earlier defendant had conveyed the Garden Drive property to the company. She agreed that if the judgment in the case were vacated her company would own the property free of any liens of judgment entered against defendant.

The defendant then testified that he contracted for the construction of his house on Garden Drive. Construction on the house began in May 1981 and the occupancy permit was issued in late January 1982. Defendant moved into the house on February 1, 1982, with a roommate, Mark Edwards, and during the middle or end of March 1982, defendant moved into his grandmother's apartment at 2832 Ainslie in Chicago. Edwards remained in the Garden Drive house until May 1982; approximately April 1, 1982, Carl Pedersen moved in. Defendant rented the house fully furnished to Edwards and Pedersen, but they were responsible for paying the utility bills. They paid the rent to a neighbor and friend of defendant, and from April to October of 1982, defendant saw Pedersen on only a few occasions. Defendant did not notify his employer of a change of address when he moved to the apartment on Ainslie in March 1982 because he thought he was going to be there for only a month or so. He continued to live in the apartment until November 1982 when he moved back to the Garden Drive house. Defendant first learned of the present lawsuit in November 1982 when a deputy sheriff served him with an execution of judgment.

On cross-examination defendant testified that on April 20, 1982, he informed his employer of a change of address to P.O. Box 148, Wayne, Illinois. He explained that, while presently residing at the Garden Drive house in Bartlett, he occasionally picks up mail from the

Wayne post-office box. Wayne, a Du Page County suburb, is 4 to 5 miles away from Bartlett and is not in the vicinity of 2832 West Ainslie in Chicago. On July 9, 1982, defendant certified to the Internal Revenue Service, by way of a W-4 form, that his residential address was 29 W 381 Garden Drive, Bartlett, Illinois. Throughout the year of 1982, utility bills were in the name of defendant; the telephone at the Garden Drive address was listed in defendant's name, and his driver's license showed the Garden Drive address. A checking account at the Community Bank listed the Garden Drive address. Defendant never notified the U.S. Post Office of a change of address from the house on Garden Drive. Defendant further testified that after he received the execution of judgment in November 1982 he conveyed his interest in the Garden Drive property to his mother's corporation and the corporation still owns the property.

Defendant introduced three items of correspondence addressed to him at the Ainslie address, dated May 1, 1982, May 12, 1982, and July 3, 1982, as evidence of mail being received at this address.

At the close of this hearing, the court found that defendant's usual place of abode was the residence at 29 W 381 Garden Drive in Bartlett and that the service of summons was proper. The court thereby denied defendant's motion to quash service.

Defendant filed a motion to reconsider the denial of the motion to quash service of summons, asserting that the Garden Drive address was not his abode for purposes of substitute service and that Carl Pedersen was merely a month-to-month tenant and not a member of defendant's family.

On February 21, 1984, the court denied defendant's motion to reconsider its denial of the motion to quash service of summons. The evidentiary hearing on defendant's petition to vacate the default-judgment orders was continued to March 19, 1984. On March 19, an agreed order was entered which continued the hearing to March 28, 1984, at 1:30 p.m.

At 9:30 a.m. on March 28, counsel for both parties appeared before the court. Counsel for defendant presented two motions to the court; one was for leave to withdraw as defense counsel and the other was an emergency motion to continue the hearing which was scheduled for that afternoon. Counsel stated to the court that defendant knew about the March 28 hearing date but that he could not attend the hearing because he was in Michigan. Counsel argued that he was seeking leave to withdraw because defendant was unwilling to cooperate. The court granted defense counsel's motion for leave to withdraw and denied the motion to continue, finding that defendant had notice

that the hearing was set for 1:30 on March 28.

When the case was called at 1:30 p.m. on March 28 defendant failed to appear. Plaintiff appeared, had three witnesses present in court, and was ready to proceed. The court denied defendant's petition to vacate the default order and judgment. The order to that effect recited not only that defendant's petition to vacate was denied, but also that the sums held by defendant's employer pursuant to wage deduction proceedings be immediately released to plaintiff and that an additional judgment of $176 be entered against defendant.

On April 27, 1984, defendant, by his newly retained counsel, filed a motion to vacate the March 28 order (which denied defendant's petition to vacate the August 1982 default orders) and for hearing *instanter*. Following a hearing on May 14, the court denied the motion to vacate.

Defendant appeals from the following orders: (1) the August 9, 1982, order defaulting defendant, (2) the August 16, 1982, order entering judgment in favor of plaintiff and against defendant for $19,259.64, (3) the December 28, 1983, order denying defendant's motion to quash service of summons, (4) the February 21, 1984, order denying defendant's motion to reconsider the December 28, order, (5) the March 28, 1984, order denying defendant's petition to vacate the August 1982 orders, abating a February 1983 wage-deduction order, and entering an additional judgment in favor of plaintiff for $176, and (6) the May 14, 1984, order denying defendant's motion to vacate the March 28 order.

Section 2—203 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—203) requires in pertinent part that "service of summons upon an individual defendant shall be made (1) by leaving a copy thereof with the defendant personally or (2) by leaving a copy at the defendant's usual place of abode, with some person of the family, of the age of 13 years or upwards, and informing that person of the contents thereof, ***." The sheriff's return, using the language of section 2—203, reflects that Deputy J. Sisco effected service upon defendant on May 13, 1982, at 29 W 381 Garden Drive, Bartlett, Illinois, by leaving a copy of the summons and complaint with "Carl Pedersen, Roommate," informing him of the contents and mailing a copy of the summons to defendant at the same address.

Defendant's affidavit in support of his motion to quash service of summons stated that he resided at 2832 West Ainslie in Chicago on the date of the alleged service, that at no relevant time was 29 W 381 Garden Drive in Bartlett his usual place of abode, that Carl Pedersen was not defendant's roommate but was a tenant of defendant on a

month-to-month basis, that the purported service of summons was accordingly improper, and that he had no knowledge of the lawsuit until November 18, 1982, when he was served with an execution of judgment. Plaintiff filed no counteraffidavits, and the deputy who made the return did not appear or testify.

■ Where personal jurisdiction is based on constructive service, strict compliance with every requirement of the statute must be shown. (*ITT Thorp Corp. v. Hitesman* (1983), 115 Ill. App. 3d 202, 205; *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1139.) Unlike personal service, no presumption of validity of service arises from serving a member of defendant's family at his usual place of abode. (100 Ill. App. 3d 1135, 1139.) Moreover, the general rule, as set forth by this court in *Harris v. American Legion John T. Shelton Post No. 838* (1973), 12 Ill. App. 3d 235, 237, is that "where [the] return is challenged by affidavit and there are no counteraffidavits, the return itself is not even evidence, and, absent testimony by the deputy, the affidavits must be taken as true and the purported service of summons quashed." See also *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1139-40; *Clinton Co. v. Eggleston* (1979), 78 Ill. App. 3d 552, 556-57.

In *Clinton*, defendant James Eggleston filed an affidavit in support of his motion to quash service of summons which stated, *inter alia*, that no one was home at the time of the purported service, that the person purportedly served did not reside at defendant's usual place of abode, and that such person was not a member of defendant's family. No counteraffidavits were filed. Although the deputy sheriff testified, the reviewing court concluded his testimony did not contradict the essential allegations of defendant's affidavit. Moreover, the court concluded that there was no testimony that the apartment where he left the summons was the defendant's usual place of abode, and that there was no testimony that the person who answered the door was a "person of the family" of defendant. Accordingly, the court reversed, holding that the trial court erred in denying the motion to quash service. *Clinton Co. v. Eggleston* (1979), 78 Ill. App. 3d 552, 556-57.

This rule of law was recently discussed by the Illinois Supreme Court in *Nibco, Inc. v. Johnson* (1983), 98 Ill. 2d 166. In *Nibco*, the sheriff's return of service indicated that the deputy effected service upon defendant, Patricia Johnson, by delivering a copy of the summons to a person of her family over the age of 13 years named Moh Joe Johnson. Defendant filed an affidavit in support of her motion to quash service stating that no Joe Johnson or other male lived with her on the date of the alleged service. The deputy testified at the

hearing on the motion to quash, stating that his daily report sheet indicated he had served Joe Johnson, who identified himself as a member of defendant's household. On cross-examination, the deputy testified that he assumed Joe Johnson was living at the service address and was a member of the household. On redirect examination, he stated that Joe Johnson had admitted knowing defendant. Defendant did not testify or offer evidence other than the affidavit in support of her motion. The trial court found that Joe Johnson had identified himself as a member of the household and, accordingly, denied defendant's motion to quash. The appellate court reversed the decision of the circuit court and ordered service quashed and the default judgment vacated. The supreme court then reversed the appellate court and affirmed the circuit court. The court stated the rule that when there is substitute personal service, the officer's return is *prima facie* evidence of service which cannot be set aside upon the uncorroborated affidavit of the person served; it can only be set aside by clear and satisfactory evidence. (98 Ill. 2d 166, 172, citing *Marnik v. Cusack* (1925), 317 Ill. 362, 365.) The *Nibco* court explained that this rule applies only to matters within the personal knowledge of the officer making the return. (See also *Chiaro v. Lemberis* (1960), 28 Ill. App. 2d 164, 172-73.) The *Nibco* court further stated:

"However, the recital in the return that Joe Johnson was a member of defendant's household was presumptively not within the personal knowledge of the officer. This recital could be denied by the affidavit of the defendant, as it was. If the affidavit were not contradicted, or if it were unrebutted, that part of the affidavit attacking those recitals in the return which are beyond the personal knowledge of the officer would be taken as true.

Here, however, Nibco did not rely solely on the return of the summons. When the question of the validity of the recitals in the return was raised, evidence of the deputy who made the service was presented in support of those recitals. The question of fact was thus presented to the trial court as to whether the person whom the deputy served was a member of the defendant's household on the date that service was made. The deputy gave evidence in support of his conclusion that Joe Johnson was a proper person upon whom substitute service could be made. *** Defendant Johnson offered no evidence to contradict or rebut the deputy's testimony. The trial court had, in support of her position, only the bare assertion contained in her affidavit, which of course, is not subject to cross-examination. The

weight to be given to the assertions in the affidavit and to the testimony of the deputy must be peculiarly within the province of the trial court." (98 Ill. 2d 166, 172-73.)

The supreme court concluded that the trial court's determination of this question of fact was not contrary to the manifest weight of the evidence and, therefore, affirmed the decision to deny the motion to quash. 98 Ill. 2d 166, 174-75.

■ In the present case, the serving officer did not testify; but plaintiff did not rely solely on the return of the summons. While he did not present any witnesses at the hearing, he did cross-examine the three defense witnesses. This cross-examination elicited from Carl Pederson that he did reside at the Garden Drive address as a tenant of defendant. It also elicited admissions from defendant that (1) he certified to the Internal Revenue Service that his residential address was 29 W 381 Garden Drive; (2) he informed his employer of a change of address to a post-office box within 4 miles from Bartlett; (3) the utility bills for the Bartlett residence were in his name and mailed to the Bartlett residence; (4) the telephone at the Bartlett address was listed in his name; (5) his driver's license reflected the Bartlett address; (6) his Community Bank checking account listed the Bartlett address; and (7) defendant never notified the U.S. Post Office of any change of address from Bartlett.

The trial court had defendant's affidavit disclaiming 29 W 381 Garden Drive as his usual place of abode and disclaiming Carl Pederson as a member of his family for the purpose of section 2—203(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—203(a)). The court also had cross-examination testimony of defendant's witnesses which rebutted defendant's affidavit. The weight to be given to the assertions in the affidavit and the testimony of the witnesses must be peculiarly within the province of the trial court. (*Nibco, Inc. v. Johnson* (1983), 98 Ill. 2d 166, 173.) This court should not disturb the trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. 98 Ill. 2d 166, 173, quoting from *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.

We find that the service of summons was valid and the court's denial of the motion to quash was proper. This result is not contrary to the Illinois position that the relationship of tenant and landlord, living within the same dwelling, constitutes "members of the same family" for the purpose of substituted service. See *Edward Hines Lumber Co. v. Smith* (1961), 29 Ill. App. 2d 35 (where service on defendant's resident landlord was valid); *Sanchez v. Randall* (1961), 31 Ill. App. 2d 41

(where service on defendant's resident tenant was valid); see also *Race v. Oldridge* (1878), 90 Ill. 250.

■ ■ Defendant's second contention is that the trial court erred in not vacating the default judgment. Section 2—1401, formerly section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72), provides the procedure for obtaining relief from judgments after the passing of 30 days from the date of entry. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401.) A motion to vacate a default judgment pursuant to section 2—1401 invokes the equitable powers of the court, as justice and fairness require, so that one may not enforce a default judgment by unfair, unjust or unconscionable circumstances. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613.) To warrant relief from a default judgment under section 2—1401, the petitioner must plead and prove the existence of a meritorious defense and the exercise of due diligence in presenting this defense and in the filing the section 2—1401 petition. (*Verson Allsteel Press Co. v. Mackworth Rees, Division of Avis Industrial, Inc.* (1981), 99 Ill. App. 3d 789, 792; *Taxman v. Health & Hospital Governing Com. of Cook County* (1980), 83 Ill. App. 3d 499, 501.) In considering such petition, the court should determine whether a party has wilfully disregarded the process of the court or is so indifferent to it that the party is chargeable with culpable negligence. (*Verson Allsteel Press Co. v. Mackworth Rees, Division of Avis Industrial, Inc.* (1981), 99 Ill. App. 3d 789, 792; *Bird v. Kostbade* (1977), 52 Ill. App. 3d 741, 743.) Whether section 2—1401 relief should be granted lies within the sound discretion of the trial court, and its decision will not be disturbed upon appeal unless there is an abuse of discretion. *David Plywood & Lumber Co. v. Sloan* (1977), 52 Ill. App. 3d 71; *George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973.

Plaintiff contends defendant did not present sufficient facts to prove he was diligent in filing the section 2—1401 petition. In *Hiram Walker Distributing Co. v. Williams* (1981), 99 Ill. App. 3d 878, 881, the court noted that such a contention has the effect of invoking the defense of *laches*, that there are no fixed rules as to what constitute *laches*, and its existence is determined by the facts and circumstances of each case. (*Hiram Walker Distributing Co. v. Williams* (1981), 99 Ill. App. 3d 878, 881; *Stehman v. Reichhold Chemicals, Inc.* (1965), 57 Ill. App. 2d 40, 47-48.) In *Diacou v. Palos State Bank* (1975), 31 Ill. App. 3d 283, the appellate court excused the petitioner's failure to respond to a trial call and the lapse of time up to the date when the petitioner first learned that his cause had been dismissed, but focused on the time period after that until he filed his section 72 petition to

vacate the dismissal. (31 Ill. App. 3d 283, 287.) The court noted that the petitioner failed to allege any reason for the three-month delay in filing the petition, and that since the plaintiff did not establish any excuse for the failure to exercise diligence in the presentation of the petition, the order vacating the judgment was reversed. The supreme court affirmed this reasoning and result, and found that the plaintiff was not diligent during the entire period following the entry of the dismissal order. *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 309-10.

■ In the instant case, defendant admitted he learned about the judgment on November 18, 1982, but neither he nor his attorneys acted on this knowledge until February 9, 1983. In neither the motion to vacate, nor the affidavit supporting the motion, did defendant allege any facts to prove that he was diligent in filing the section 2— 1401 petition. We note that defendant's conduct during the entire period following the filing of his petition, like the plaintiffs' in *Diacou*, demonstrated a lack of diligence. Defendant admitted that he received mail at the Bartlett address, and the record reflects that notices were mailed to that address on August 9, 1982, and August 23, 1982, yet defendant does not admit to learning about the judgment until November 18, 1982. Even after defendant filed his petition, his lack of diligence continued. The defendant's failure to diligently appear for his deposition resulted in sanctions being imposed against him on at least one occasion. Finally, defendant failed to appear at the scheduled evidentiary hearing on defendant's petition to vacate on March 28, 1984. The defendant conceded that his attorney informed him of this hearing 10 days prior to March 28. Defendant's counsel informed the court that on March 18, 1984, he personally informed the defendant of the hearing date and time and he received no objection from the defendant. However, at the scheduled time for the evidentiary hearing, the defendant neglected to appear. No excuse was given to the court for defendant's failure to appear at this hearing other than his claim that he was out of town. Such a cavalier attitude cannot be condoned. Under these circumstances, we conclude that the trial judge did not abuse his discretion in denying defendant's 2—1401 petition.

■ Defendant's final contention is that the trial court erred in granting defense counsel's motion to withdraw and in denying the motion to continue the March 28, 1984, hearing. This matter is not properly before this court because defendant did not appeal from that particular order.

Defendant's notice of appeal states that he is appealing from six orders of the trial court including "an order entered March 28, 1984

which denied Defendant's Petition to vacate order entered August 16, 1982 and August 9, 1982, abated a wage deduction order of February 14, 1983, and entered an additional Judgement in favor of the Plaintiff in the sum of $176.00" and "the order of May 14, 1984 denying Defendant's motion to vacate the order of March 28, 1984." The notice makes no mention of the other March 28, 1984, order which granted leave to withdraw to defense counsel and denied defendant's emergency motion to continue the hearing. There were clearly two separate orders entered on March 28, 1984. Defendant's subsequent motion to vacate, filed April 27, 1984, sought to vacate only "the order of March 28, 1984 denying Defendant's Petition" and not the other March 28 order.

Supreme Court Rule 303(c)(2) requires the notice of appeal to "specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (94 Ill. 2d R. 303(c)(2).) Generally, when an appeal is taken from a specified judgment only, a reviewing court does not acquire jurisdiction to review other judgments which have not been specified in the notice of appeal. (*E.M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 548; see *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, 61.) In other words, a notice of appeal confers jurisdiction on a court of review to consider only the judgments or part thereof specified in the notice of appeal. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433.) In the present case, defendant's claim of error as to the motion to withdraw and the motion to continue was not included in the notice of appeal. This court, therefore, has no jurisdiction to decide that matter. See *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1062.

For the reasons herein expressed, we affirm the orders of the circuit court which denied defendant's motion to quash service of summons and to vacate the default judgment.

Affirmed.

NASH, P.J., and SCHNAKE, J., concur.