SAFETY-KLEEN CORPORATION, Plaintiff-Appellee, v. CANADIAN UNI-
VERSAL INSURANCE COMPANY, LTD., *et al.*, Defendants (Sheldon White-
house, Director of Business Regulation for the State of Rhode Island, as
Receiver of Canadian Universal Insurance Company, Ltd., Defendant-
Appellant).

Second District   No. 2—93—0246

Opinion filed February 25, 1994.—Modified on denial of rehearing
April 6, 1994.

C. Philip Curley and Ellen G. Robinson, both of Robinson, Curley &
Clayton, P.C., of Chicago (Alan F. Curley, of counsel), for appellant.

Michael Dockterman, of Wildman, Harrold, Allen & Dixon, of Chicago (Anthony G. Hopp, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Defendant, Sheldon Whitehouse, domestic receiver for Canadian Universal Insurance Company (CU), appeals the order of the circuit court of Kane County denying a petition for relief from a default judgment entered by that court against CU and in favor of plaintiff, Safety-Kleen Corporation (Safety-Kleen). For the following reasons, we reverse the decision of the trial court denying defendant's petition for relief from the default judgment.

The common-law record indicates that for a period of $13^{1}/_{2}$ months in 1979 and 1980 CU insured Safety-Kleen, a manufacturer of industrial cleaning solvents. Safety-Kleen is a corporation organized under the laws of the State of Wisconsin and doing business in Kane County, Illinois. CU is an insolvent stock insurance company organized under the laws of Canada and doing business in Kane County, Illinois.

Sometime prior to August 1989, James and Karen Junker sued Safety-Kleen in California for damages arising from James' contraction of an undisclosed disease allegedly caused by exposure to Safety-Kleen's products. In a deposition sometime in 1990, James Junker alleged exposure during the period of CU's coverage of Safety-Kleen. On May 22, 1990, Safety-Kleen notified CU of the suit. On October 30, 1990, CU reserved rights under the policy for failure to notify in a timely manner and failure to pay the $100,000 deductible, among other reasons. In November 1990, Safety-Kleen settled with the Junkers for an undisclosed amount. Safety-Kleen made demand upon CU for $315,300, purportedly representing CU's proportionate share (12.612%) of the settlement.

In January 1991, Safety-Kleen filed a declaratory judgment action in Kane County against CU, seeking a declaration of coverage for the Junker claim. Safety-Kleen also filed for declaratory judgment against its other insurers, Illinois Employers Insurance of Wausau and Employers Insurance of Wausau (Wausau), and later consolidated the claims. CU retained local counsel, Peregrine, Stime, Newman, Ritzman & Bruckner (Peregrine Stime), which filed a general appearance and an answer denying the substantive allegations of the complaint. Safety-Kleen served discovery upon CU, and CU received extended time to respond.

In May 1991 and again in July 1991, Safety-Kleen moved for judgment by default against Wausau. Later in July the trial court permitted Wausau to file an answer *instanter*, and discovery between these parties began.

In August 1991, CU was placed in receivership in Newfoundland, Canada, and the superintendent of insurance for Newfoundland, Paul Tapper, was appointed provisional liquidator. Shortly thereafter, counsel for Mr. Tapper, Halley Hunt, Barristers & Solicitors, informed Peregrine Stime that Coopers & Lybrand Limited had been appointed provisional liquidator on behalf of Tapper. Halley Hunt further informed Peregrine Stime that because of a wind-up order from the supreme court of Newfoundland, no action could be proceeded with or commenced against CU. Halley Hunt also informed Peregrine Stime that the provisional liquidator would not be responsible for the payment of future fees and that no further instructions were anticipated.

Peregrine Stime then moved to withdraw as counsel for CU, purportedly under orders from CU. Neither the notice of motion, the motion, nor the affidavit attached to the motion contained the last known business address of CU, nor was any of these sent to that address. The circuit court granted the motion to withdraw, instructing counsel to "cover himself" by writing to CU. The record does not demonstrate that counsel ever did so. Safety-Kleen moved for default, but the court said it would not default CU on the day its attorney withdrew. The order entered stated that CU would be subject to default if substitute counsel was not obtained within 21 days.

On November 22, 1991, Safety-Kleen filed a motion for judgment in default. Notice of this motion was sent by registered mail on November 25, 1991, to the last known business address of CU. The court entered an order of default on December 18, 1991.

On March 5 and 16, 1992, Safety-Kleen filed two motions seeking the entry of a default judgment against CU. These motions and the notices of these motions were sent to an address other than the last known address of CU. The motions were identical in all respects, except that in the *ad damnum* clause of the later-filed motion, the prayer asked for "an amount to be proven before this court." The prayer in the preamble of each motion, and in the *ad damnum* clause of the initially filed motion, requested a judgment by default in the amount of $250,000.

On March 24, 1992, the court held a proveup hearing on the default. Safety-Kleen presented as evidence only the policy of insurance and the letter whereby Safety-Kleen had notified CU of the Junker claim on May 22, 1990. The trial court then entered a default judgment in the amount of $1,002,754.37. Specifically, the court awarded $633,335.90 in indemnity, $347,543.76 in legal and professional expenses, and $21,574.71 in legal fees for this case.

In April 1992, Safety-Kleen enrolled its judgment in the superior

court of Providence, Rhode Island. Safety-Kleen attempted to execute this judgment against an indenture of trust, valued at approximately $1 million, maintained in Rhode Island by CU for the benefit of its domestic policyholders. In June 1992, the Canadian liquidator sought injunctive relief in Rhode Island to prevent Safety-Kleen from executing against the trust. The liquidator dismissed the action when the director of business regulation for the State of Rhode Island (defendant Sheldon Whitehouse) petitioned for appointment as domicilliary receiver. CU was then placed in receivership in Rhode Island.

Defendant resisted Safety-Kleen's enforcement efforts in Rhode Island and subsequently moved for vacatur of the default judgment and, in the alternative, to stay enforcement of the judgment, pursuant to section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 1992)). The denial of this petition is the subject of this appeal. Defendant alleges defects in the judgment, the existence of meritorious defenses and due diligence in protecting CU's rights, and international comity as reasons for reversing the order of the circuit court and vacating the default judgment.

## SECTION 2—1401 MOTION

■ The decision whether to grant relief from a judgment pursuant to section 2—1401 of the Code (735 ILCS 5/2—1401 (West 1992)) rests soundly in the discretion of the trial court and will not be disturbed absent an abuse of discretion. (*Kaput v. Hoey* (1988), 124 Ill. 2d 370, 378; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221.) A party seeking relief under section 2—1401 must demonstrate the existence of a meritorious defense and due diligence in protecting his rights, both in presenting the claim or defense at the trial level and in filing the section 2—1401 petition. (*Smith*, 114 Ill. 2d at 221.) As affirmative defenses, CU asserts failure to comply with the policy requirements regarding notice and the payment of the deductible. The record supports these defenses as meritorious, to the extent that the deductible does not appear to have been paid, the notice of claim letter of May 22, 1990, did not comply with the specificity requirements of the policy, and the notice was not timely.

■ Due diligence requires the section 2—1401 petitioner to have a reasonable excuse for the failure to act within a reasonable time. (*Smith*, 114 Ill. 2d at 222.) The party must show that the failure to defend resulted from an excusable mistake rather than negligence. (*Smith*, 114 Ill. 2d at 222.) In *Smith*, the court addressed only the question whether the defendant had diligently sought to present its position to the trial court. (*Smith*, 114 Ill. 2d at 221.) The court found a lack of diligence where the defendant was served in June, the

default was entered in October, and the defendant did not petition for relief until May, after garnishment proceedings had begun. (*Smith*, 114 Ill. 2d at 224.) The defendant contended lack of notice and insufficient service of process, but the court found this excuse unreasonable where an agent of the defendant admitted receiving notice of the proceedings. (*Smith*, 114 Ill. 2d at 224.) Thus, the supreme court upheld the denial of the defendant's section 2—1401 petition. *Smith*, 114 Ill. 2d at 225.

■ In the present case, all parties and the court were aware that CU had gone into receivership. The Canadian liquidator was bound by the Canadian Winding Up Act (R.S.C., ch. W—10, § 21 (1970)) not to continue litigation involving CU without consent of the supreme court of Newfoundland. The Canadian liquidator is further excused by the lack of proper notice of counsel's withdrawal (discussed below). Defendant Sheldon Whitehouse, who became domestic receiver in June 1992, could not be expected to petition any sooner than he did for relief from a judgment entered many months before he had become receiver. Thus, unlike the defendant in *Smith*, CU and its receivers have ample reasonable excuse for the failure to defend. Therefore, the trial court should have vacated the default judgment.

Diligence in protecting one's rights extends to diligence in filing the section 2—1401 petition. (*Sterne v. Forrest* (1986), 145 Ill. App. 3d 268, 278.) In *Sterne*, the defendant had notice of the default judgment in November, but failed to take any action until the following February. (*Sterne*, 145 Ill. App. 3d at 278.) This court affirmed the denial of the section 2—1401 petition where the defendant offered no excuse for this three-month delay. *Sterne*, 145 Ill. App. 3d at 278.

In the present case, the Canadian provisional liquidator's inaction is attributable to the Winding Up Act and to the lack of notice of counsel's withdrawal (discussed below). Defendant Whitehouse moved to vacate the default judgment in December 1992, six months after his appointment as receiver. This delay was not unreasonable, where defendant was appointed receiver in the middle of a liquidation fraught with litigation, and where Safety-Kleen ignored several notice provisions of the Code of Civil Procedure.

The purpose of section 2—1401 is to relieve a diligent party of an unjust decision, and a court may relax the requirements of section 2—1401 in cases of manifest injustice. (*Reuben H. Donnelly Corp. v. Thomas* (1979), 79 Ill. App. 3d 726, 730.) Thus, even if CU had not demonstrated due diligence, we may find an abuse of discretion where the enforcement of the default judgment would be manifestly unfair, unjust, and unconscionable. *Smith*, 114 Ill. 2d at 225.

The injustice of this decision begins prior to the entry of the

default judgment, at the time CU's local counsel was permitted to withdraw. "[A]n attorney may not, in the absence of his client's consent, withdraw from a case without justifiable cause, and then only after proper notice to [the] client and leave of court, where [the attorney's] name has been entered as attorney of record." *People v. Franklin* (1953), 415 Ill. 514, 516; *Fessler v. Weiss* (1952), 348 Ill. App. 21, 25; see also *Bergman v. Hedges* (1969), 111 Ill. App. 2d 35, 38.

In *Franklin*, the defendant alleged the denial of the right to substitute counsel. (*Franklin*, 415 Ill. at 516.) The court found the record contained no indication that defendant had actually sought to substitute counsel, only a motion by counsel to withdraw for no apparent reason. (*Franklin*, 415 Ill. at 516.) The court held that an attorney cannot withdraw without notice to the client and leave of court, which leave should not be granted where the client's case would suffer. (*Franklin*, 415 Ill. at 516.) The court affirmed the denial of the motion to withdraw because the motion had been made on the day of trial. *Franklin*, 415 Ill. at 521.

In the present case, the trial court allowed Peregrine Stime to withdraw because the firm alleged that CU had fired it. The court had before it the letter from Halley Hunt to Peregrine Stime. This letter contained the following information: (1) CU had been placed in receivership; (2) Coopers & Lybrand Limited would serve as provisional liquidator; (3) CU could no longer afford to defend the suit in which Peregrine Stime was involved; (4) Coopers & Lybrand Limited would not be responsible for future legal fees; (5) most attorneys were expected to seek leave of court to withdraw from the case; and (6) provisions of the Winding Up Act required leave of the supreme court of Newfoundland before any litigation involving CU could continue. This letter from one attorney to another merely notifies the receiving attorney that the client has been placed in receivership. The letter indicates an expectation that the recipient might seek leave of court to withdraw, but it does not clearly consent to withdrawal. Neither does it clearly indicate that Halley Hunt was authorized to speak for CU.

Furthermore, the notice element is also lacking. Supreme Court Rule 13(c) sets forth the notice requirements for withdrawal by counsel:

> "(2) *Notice of Withdrawal.* An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record, and, *unless another attorney is substituted, he must give reasonable notice* of the time and place of the presentation of the motion for leave to withdraw, *by personal service, or by certified mail directed to the party represented by him at his last*

> *known business or residence address. Such notice shall advise said party that to insure notice of any action in said cause, he should retain other counsel therein or file with the clerk of the court, within 21 days after entry of the order of withdrawal, his supplementary appearance stating therein an address at which service of notices or other papers may be had upon him.*
> \*\*\*
> (4) *Copy to be Served on Party.* If the party does not appear at the time the motion for withdrawal is granted, either in person or by substitute counsel, then, *within three days of the entry of the order of withdrawal, a copy thereof shall be served upon the party by the withdrawing attorney in the manner provided in paragraph (c)(2) of this rule, and proof of service shall be made and filed.*"

(Emphasis added.) 134 Ill. 2d R. 13(c).

In the present case, the order permitting the withdrawal recited that due notice had been given. The common-law record, however, does not support this finding. The record indicates that the notice was sent not to the last known mailing address of CU, but to a Chicago law firm. Nor did the notice contain the specific warnings recited in Rule 13; nor was CU notified within three days of counsel's withdrawal. Thus, CU was not properly notified of the withdrawal of its counsel prior to the entry of the default judgment.

An attorney cannot withdraw without proper notice to the client. (*Fessler,* 348 Ill. App. at 25.) In *Fessler,* the attorney for the insured sought leave of court to withdraw, because the liquidator of the insolvent insurer had refused to give the attorney further authority to defend the insured in a personal injury matter. (*Fessler,* 348 Ill. App. at 25.) The trial court denied the motion for withdrawal, and the case proceeded. (*Fessler,* 348 Ill. App. at 25.) The defendant did not attend the trial, and counsel presented no evidence in defense. Following a verdict for the plaintiff, the trial court granted the defendant's motion for a new trial. (*Fessler,* 348 Ill. App. at 25.) The appellate court upheld this order, where the defendant had no notice of the withdrawal and had not been notified of the trial, because allowing such a verdict to stand would have been unjust. *Fessler,* 348 Ill. App. at 30.

In the present case, the record does not indicate that CU consented to the withdrawal, nor was it properly notified of counsel's withdrawal prior to the entry of the default judgment. Under these circumstances, the failure to defend was excusable, and the entry of a default judgment was unjust. The failure to vacate that judgment constituted an abuse of discretion.

Supreme Court Rule 13(c)(5) required Safety-Kleen to direct all notices to CU at its last known business address, following the with-

drawal of CU's counsel. (134 Ill. 2d R. 13(c)(5).) These notices, however, were sent to a different address. Thus, Safety-Kleen failed to convey proper notice of the motions for judgment by default to CU.

Nor did CU receive notice of the amount of damages sought in the default action. If new or additional relief is sought against a party in default, notice to that party must state that a pleading seeking new or additional relief has been filed and that a default judgment including the new or additional relief may be sought if the party fails to appear. (134 Ill. 2d R. 105.) The failure to comply with the notice requirements of Rule 105 renders a default judgment void. (*Palatine Savings & Loan Association v. National Bank & Trust Co.* (1980), 80 Ill. App. 3d 437, 440.) In *Palatine*, a deficiency judgment was entered by default against defendants, following the foreclosure of mortgaged property. (*Palatine*, 80 Ill. App. 3d at 438.) Because the defendants had no notice, as required by Rule 105, that such a judgment might be sought, this court found the judgment to be void. *Palatine*, 80 Ill. App. 3d at 438.

Similarly, the judgment Safety-Kleen received included Wausau's liability as well as CU's. CU had no notice that such relief was sought. Nowhere in the pleadings is such relief requested, nor does any notice purportedly sent to CU state that such new or additional relief would be sought. Therefore, as in *Palatine*, the judgment is void and should have been vacated.

A party has the right to assume that relief granted by a default judgment will not exceed or substantially differ from that requested in the complaint. (*Eckel v. Bynum* (1992), 240 Ill. App. 3d 867, 877.) Thus, the relief granted on default must not exceed or substantially differ from the relief sought, in the absence of notice to the defaulted party. (*Albany Bank & Trust Co. N.A. v. Albany Bank & Trust Co. N.A.* (1986), 142 Ill. App. 3d 390, 392.) Safety-Kleen filed twice for default, requesting relief in the amount of $250,000. Upon first reading, the motions appear to be identical. The second motion differs from the first only in the *ad damnum* clause, the final clause wherein the party lists prayers for relief. In the later-filed motion, this clause prays for relief "in an amount to be proven before this court." Where this court first read these motions as identical, and where the latter motion in no way purports to be an amended motion, it cannot be said that CU was placed on notice that Safety-Kleen sought more than $250,000 in relief.

In case of default, the prayer for relief limits the relief obtainable. (735 ILCS 5/2—604 (West 1992).) A general prayer for relief in the complaint does not suffice to permit a default judgment in excess of

the *ad damnum* clause. (*Rauscher v. Albert* (1986), 145 Ill. App. 3d 40, 44.) In *Rauscher*, the plaintiffs sought $1,440 in damages for breach of covenants in a warranty deed. (*Rauscher*, 145 Ill. App. 3d at 41.) The court awarded $6,415.88 by default against the defendants. (*Rauscher*, 145 Ill. App. 3d at 41.) Finding that the defendants had no notice that additional relief would be sought, the court held void that portion of the judgment in excess of the *ad damnum*. *Rauscher*, 145 Ill. App. 3d at 41.

Similarly, Safety-Kleen prayed for relief in the amount of $250,000 in its motion for default. The court awarded judgment in the amount of $1,002,754.37. This amount is grossly in excess of the *ad damnum*, of the policy limit, and of CU's purported proportionate share of the *Junker* settlement. The common-law record is not clear as to how the court arrived at each of the figures which totalled this sum. At the very least, the amount awarded for attorney fees in the present action, $21,574.71 for a default judgment, seems suspiciously inflated. Like the court in *Rauscher*, the trial court here erred in awarding a default judgment in excess of the *ad damnum*, absent notice to the defendant. Therefore, as in *Rauscher*, the judgment is void at least to the extent it exceeds the *ad damnum*.

Finally, defendant contends that the trial court should have vacated the default judgment in the interest of international comity. Safety-Kleen argues that this issue is waived, because CU failed to raise it prior to the entry of the default judgment. Generally, issues not raised in the trial court are waived on appeal. (*Nugent v. Miller* (1983), 119 Ill. App. 3d 382, 387.) However, the court may relax the waiver rule to achieve a just result. (*Wozniak v. Segal* (1974), 56 Ill. 2d 457, 460-61; *Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333.) Due to the lack of notice of counsel's withdrawal discussed above, CU was left without counsel and could not be expected to present a defense. (See *Fessler*, 348 Ill. App. at 25.) Under these circumstances justice requires that the argument be heard.

Judicial comity is the principle whereby the courts of one jurisdiction may give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect. (*Schoeberlein v. Purdue University* (1989), 129 Ill. 2d 372, 378.) It is a rule of practice rather than a rule of law. *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 254.

Judicial comity should not be confused with "conflict of laws," the doctrine whereby an Illinois court will apply the theoretical constructs of the Restatement (Second) of Conflict of Laws to determine whether a foreign jurisdiction has such a significant relationship with the parties as to necessitate the application of the

foreign jurisdiction's law to the case at bar. (*Rollins*, 141 Ill. 2d at 254; *Nelson v. Hix* (1988), 122 Ill. 2d 343, 352.) Comity is an older doctrine, grounded in intersovereign respect, which was the generally accepted operational theory during the latter half of the nineteenth century. *Schoeberlein*, 129 Ill. 2d at 378; *Nelson*, 122 Ill. 2d at 352.

In determining whether to afford comity to the law of another jurisdiction, a court should consider whether the law offends the public policy of Illinois or the general interests of the citizens of Illinois. (*Schoeberlein*, 129 Ill. 2d at 378-79.) In *Schoeberlein*, the Illinois Supreme Court held that as a matter of comity Illinois would recognize Indiana's sovereign immunity statute. (*Schoeberlein*, 129 Ill. 2d at 384-85.) The court found the Indiana act similar to its Illinois counterpart and thus not contrary to the public policy of Illinois. (*Schoeberlein*, 129 Ill. 2d at 380.) The court further found that recognition of the Indiana act did not adversely affect any interest of the citizens of Illinois. (*Schoeberlein*, 129 Ill. 2d at 379.) Thus, the court upheld a dismissal based on the Indiana act. *Schoeberlein*, 129 Ill. 2d at 385.

In the present case, the court and all parties were advised of the provisions of the Canadian Winding Up Act when Peregrine Stime moved to withdraw. The Winding Up Act provides that, after the wind-up order issues, "no suit, action or other proceeding shall be proceeded with or commenced against the company," except with leave of the liquidation court, and subject to such terms as that court imposes. (R.S.C., ch. W—10, § 21 (1970).) The Act further provides that any attachment or execution put in force against the company after the issuance of the order shall be void. (R.S.C., ch. W—10, § 22 (1970).) In accordance with this statute, the Canadian provisional liquidator delayed defending the action at bar, whereupon the default judgment was entered.

The Business Corporation Act of 1983 has no provision similar to the Canadian Winding Up Act. (805 ILCS 5/1.01 *et seq.* (West 1992).) However, the apparent purpose underlying the Canadian statute resembles the purpose underlying the uniform provisions for liquidation of the Illinois Insurance Code. (215 ILCS 5/221.10 (West 1992).) With regard to insurance company liquidation, it is the policy of this State that, so far as possible, "the assets of [insolvent] insurers shall be equally and uniformly conserved in all states, and that claimants against such insurers shall receive equal and uniform treatment irrespective of residence or the place of the acts or contracts upon which their claims are based." (215 ILCS 5/221.10 *et seq.* (West 1992).) The provisions of the Canadian statute operate to fulfill this very purpose. Thus, we find that it does not offend the public policy of Illinois.

The consideration whether to afford comity to a foreign sovereign must include due regard to the rights of the citizens of Illinois. (*Schoeberlein*, 129 Ill. 2d at 379; *Clubb v. Clubb* (1949), 402 Ill. 390, 400.) In *Schoeberlein*, Indiana's sovereign immunity statute operated to preclude recovery. The court found this passage of the Illinois Constitution to be relevant: "Every person shall find a certain remedy *** for all injuries and wrongs ***." (Ill. Const. 1970, art. I, § 12.) The court held, however, that this passage is aspirational rather than mandatory, and therefore recognition of the Indiana statute did not offend the rights of the citizens of Illinois.

"Statutes of a state granting to a foreign corporation the privilege of doing business within the state do not make such foreign corporation a citizen or corporation of such state." (*Sprague v. Universal Voting Machine Co.* (1907), 134 Ill. App. 379, 383, citing *Pennsylvania R.R. Co. v. St. Louis, Alton & Terre Haute R.R. Co.* (1886), 118 U.S. 290, 30 L. Ed. 83, 6 S. Ct. 1094.) In this case, CU is an insolvent Rhode Island corporation, and Safety-Kleen is a Wisconsin corporation, both doing business in Illinois, either presently or previously. Neither is a citizen of Illinois. Thus, the citizens with whose interests we are concerned are the general population of Illinois.

As expressed in the purpose section of the uniform provisions for liquidation of the Illinois Insurance Code, the citizens of Illinois have an interest in the uniform conservation of the assets of insolvent insurers and in the equal treatment of claimants to such assets. (215 ILCS 5/221.10 (West 1992).) The Canadian Winding Up Act operates to protect this interest by conducting liquidation under the direction and control of a single judicial body. (R.S.C., ch. W—10, § 21 (1970).) Thus, the recognition of the Winding Up Act offends neither the public policy nor the rights of the citizens of Illinois. The trial court erred in entering the default judgment in light of the Canadian statute. It was therefore error to deny the motion for vacatur.

Because defendant has met his burden for relief under section 2—1401, and because the default judgment is void for lack of notice and otherwise manifestly unjust, and because under the principles of comity the judgment should never have been entered, we find that the circuit court abused its discretion in denying relief to defendant.

The order of the circuit court of Kane County is reversed, and this cause is remanded for vacatur of the default judgment and for further proceedings in accord with this opinion.

Reversed and remanded.

GEIGER and BOWMAN, JJ., concur.