**Leroy F. RAGAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59664.**

Court of Criminal Appeals of Texas.

Oct. 27, 1982.

Rehearing Denied Dec. 22, 1982.

Douglas M. Kennedy, Corpus Christi, for appellant.

Mike Westergren, County Atty., & Ann A. Skaro, Asst. County Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS and ODOM, JJ.

OPINION

ROBERTS, Judge.

A jury found the appellant guilty of driving while intoxicated. The court assessed a punishment of 180 days in jail and a $500 fine. In his fourth ground of error, the appellant challenges the admissibility of his tape recorded statement which was used to impeach him. He had denied being rude or cursing when he was arrested. A tape recording which was made as the officer questioned him at the scene of the arrest revealed that he had used rude language and a curse.

An oral statement made by the accused as a result of custodial interrogation between August 29, 1977, and August 31, 1981, is admissible only for impeachment purposes and only when the statement is shown to comply with the version of V.A.C.C.P. Article 38.22, Section 3, which was

---

**490**

then in effect.[1] *Alfaro v. State,* 638 S.W.2d 891 (Tex.Cr.App., 1982). One of the requirements of that statute was that "during the recording the accused is told that a recording is being made." [2] The tape recording in this case contained no such warning, but it was admitted over the appellant's objection, "Furthermore, nothing on that tape recorder says he warned him that he was going to be tape recorded." The only remaining question is whether this oral statement of the accused was "made as a result of custodial interrogation." [3]

■ It is difficult to formulate a general rule to distinguish custodial interrogation from non-custodial interrogation; a case by case approach is necessary. *Ancira v. State,* 516 S.W.2d 924, 927 (Tex.Cr.App. 1974).

In several cases, this court has considered whether an officer's questioning of an automobile driver whom he had stopped was custodial interrogation. Holding that it was custodial interrogation: *Gonzales v. State,* 581 S.W.2d 690 (Tex.Cr.App.1979) (vehicle was weaving; driver was stopped for possible DWI and asked to sit in patrol car while his license was checked; he was not free to go; he was asked if he had been in trouble before); *Scott v. State,* 564 S.W.2d 759 (Tex.Cr.App.1978) (driver stopped for routine license check, arrested for outstanding traffic warrant, and placed in patrol car; when pistol was found in his car, driver was asked to whom it belonged);

*Newberry v. State,* 552 S.W.2d 457 (Tex.Cr. App.1977) (driver was stopped for several traffic violations, and had difficulty getting out of his car and finding his license; he was asked if he had been drinking, what he had been drinking, how much he had been drinking, and what he had been doing; he was then "placed under arrest," although he had not been free to go since he was stopped); *Harper v. State,* 533 S.W.2d 776 (Tex.Cr.App.1976) (driver stopped for making a sudden turn while approaching a license check point; registration records did not match the make of car being driven; driver was asked to whom the car belonged).

Holding that it was not custodial interrogation: *Loar v. State,* 627 S.W.2d 399 (Tex. Cr.App.1981) (driver stopped for traffic violation; officer, noticing driver's "lack of control" when he was asked to get out of car and produce license, asked if he had been drinking) (alternative holding; court also held that statement was not shown to be "not part of the res gestae," and that any error was cured when defendant testified to same fact).

■ In this case, at about 6:00 p.m. on September 30, 1977, a police officer was directing traffic around some vehicles which had been involved in a minor collision at an intersection. The appellant drove his automobile through the intersection, coming very close to striking the officer and the

1. "Sec. 3. (a) An oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding for the purpose of impeachment only and when:

"(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

"(2) prior to the statement but during the recording the accused is told that a recording is being made;

"(3) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

"(4) the recording device was capable of making an accurate recording, that the operator was competent, and that the recording is accurate and has not been altered;

"(5) the statement is witnessed by at least two persons; and

"(6) all voices on the recording are identified.

"(b) Every electronic recording of any statement made by an accused during custodial interrogation must be preserved until its destruction is permitted by order of a district court of this state.

"(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." 1977 Tex.Gen.L. ch. 348 § 2.

2. See n. 1, supra, § 3(a)(2).

3. See n. 1, supra, § 3(a).

other vehicles. The appellant's automobile continued down the road, weaving from lane to lane. Feeling that the appellant was endangering other lives as well as his own, the officer pursued him in a police car. The appellant failed to stop when the officer turned on his emergency "redlights," so he sounded his siren. The appellant travelled an unusually long distance, at about 25 miles per hour, before stopping his car on the right side of the road. He opened the door and, holding onto it with both hands, pulled himself to a standing position outside his car.

As the officer approached, the appellant said, "Officer, I'm not drunk, now, I'm not drunk." This surprised the officer somewhat. He thought the appellant looked familiar. (After talking to the appellant some more, the officer remembered that he had arrested the appellant for DWI two months earlier.)

When the officer asked if the appellant was ill, he said he was not and that he hadn't been drinking. He tried to step away from the door, but he almost fell when he took his first step; the officer "assisted by holding on to his arm to maintain balance." The officer smelled a "moderately strong" odor of alcohol on the appellant's breath and knew that he had been drinking. The officer asked if the appellant was having difficulty with his car; he stated that he did not know if he was having trouble with his car or not.

The officer "went ahead and asked Mr. Ragan to go ahead and have a seat in my car so I could ask him some questions." As he "assisted" the appellant to his patrol car, the appellant gave him a driver's license, which was expired. The officer "helped" the appellant sit in the back seat of the car, closed the door, sat in the driver's seat, and began asking him questions: Where was he

going? Where was he coming from? Did he know he had been weaving? Had he been drinking? How much had he had to drink? Would he take a breath test? The officer recorded the latter part of the questioning on a small casette tape recorder, because "the County Attorney requires quite a bit of evidence in order for a complaint against a DWI to be admitted into their files."

After questioning the appellant and observing him, the officer concluded that he was "relatively intoxicated. Not to the point of unconsciousness but slightly before that." The officer decided not to offer the appellant any field sobriety tests (such as walking heel to toe) because he was afraid the appellant would fall down and be hurt. The officer told the appellant that he was "placing him under arrest," and he read the appellant his Miranda warnings.

The officer testified that he "had not placed [the appellant] into custody" when he placed him in the patrol car for questioning, because he "had not based [his] full conclusion yet" that the appellant was intoxicated.

It is well settled that interrogation can be "custodial" even though a person may not be under formal arrest.[4] *Ancira v. State,* 516 S.W.2d 924 (Tex.Cr.App.1974). *Cf. Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise *deprived of his freedom of action in any significant way*") (emphasis supplied).

It is clear to us that, at least by the time the officer began to use the tape recorder, the appellant was undergoing custodial interrogation. *Cf. Gonzales v. State,* 581 S.W.2d 690 (Tex.Cr.App.1979); *Newberry v. State,* 552 S.W.2d 457 (Tex.Cr.App.1977).

---

4. It is doubtful that Texas law recognizes such a thing as being placed under formal arrest. "A person is arrested when he has been placed under restraint or taken into custody...." V.A.C.C.P. art. 15.22. No form of words is required. *White v. State,* 601 S.W.2d 364 (Tex. Cr.App.1980). *Cf. United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.): "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

Section 3 of Article 38.22 shows a legislative recognition that electronically recorded statements are more trustworthy than unrecorded oral statements.[5] Their admission depends nonetheless on the satisfaction of the statutory predicates. The trial court erred in admitting the tape recording for impeachment purposes over the appellant's objection that it contained no warning that a recording was being made, which was one of the predicates then in effect.

The judgment is reversed and the cause is remanded.

---

5. See also Kamisar, "Foreword: *Brewer v. Williams*—A Hard Look at a Discomfitting Record," 66 Geo.L.J. 209, 236–242 (1977), reprinted in Y. Kamisar, *Police Interrogations and Confessions* 113, 132–135 (1980) (noting preferences for tape recordings in the Model Code of Pre-Arraignment Procedure and the Uniform Rules of Criminal Procedure, and proposing that no claim of a *Miranda* waiver be accepted unless all interrogations after the initiation of judicial proceedings have been tape recorded).