Jerry Robert DAVIDSON, Appellant,

v.

The STATE of Texas.

Nos. 1253–98, 1254–98.

Court of Criminal Appeals of Texas,
En Banc.

May 24, 2000.

Scott Brown, Fort Worth, for appellant.

Michael R. Casillas, Asst. Dist. Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court, in which MEYERS, PRICE, HOLLAND and WOMACK joined.

Appellant Jerry Robert Davidson was convicted by a jury of indecency with a child by contact and aggravated sexual assault of a child under 14. The jury assessed his punishment at 20 years confinement and a $10,000 fine in the indecency with a child case and 99 years confinement and a $10,000 fine in the aggravated sexual assault case. The Court of Appeals affirmed his conviction. *Davidson v. State*, 977 S.W.2d 708 (Tex.App.—Fort Worth 1998). We granted appellant's petition for discretionary review on the following ground: Did the Court of Appeals err in affirming the trial court's denial of petitioner's motion to suppress testimony regarding oral statements made by petitioner which were governed by TEX.CODE CRIM. PROC. 38.22? We reverse and remand.

### FACTS

Appellant's two daughters accused him of sexually abusing them. Early in 1995, while an investigation into those allega-

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. According to the state's brief, appellant "never admitted" that he had molested his daughters. *State's Brief on Petition for Review*, at 4–5. According to appellant's brief,

tions was pending, appellant and his wife joined a traveling carnival. In June 1995, they went into Canada with the carnival. In July 1995, as the carnival prepared to re-enter the United States, Special Agent Chuck Mazzilli of the United States Customs Service ran a routine check on all the carnival workers. His check for outstanding warrants revealed a Texas arrest warrant for appellant.

On July 24, 1995, when appellant crossed the border into Great Falls, Montana, Agent Mazzilli detained him and read him his Miranda rights.[1] Mazzilli testified that, following questioning by Mazzilli, appellant implicated himself in the sexual abuse of his two daughters.[2] Three weeks later, on August 15, 1995, Agent Mazzilli wrote a report in which he recorded his recollection of appellant's statements. No other record of appellant's statement exists. Agent Mazzilli testified at trial as to his recollections of appellant's statement, as recorded in his report. Appellant's wife and both daughters also testified about the sexual abuse.

The trial court ruled that, as a matter of public policy, the statements were admissible under the Full Faith and Credit Clause of the United States Constitution because Mazzilli had complied with both Montana and federal law in obtaining the statements. *Davidson*, 977 S.W.2d at 709. On appeal, the Court of Appeals determined that, although they were not recorded electronically pursuant to art. 38.22, appellant's statements should be afforded full faith and credit in Texas. *Id.* at 712.

### ANALYSIS

TEX.CODE CRIM. PROC. art. 38.22 provides, in relevant part:

appellant "made certain oral admissions." *Brief for Appellant*, at 4. Our review of the record indicates that appellant made statements which implicated him in the assaults on his daughters.

Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

\* \* \* \*

(e) The courts of this state shall *strictly* construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless *all* requirements of the subsection have been satisfied by the state, .... (Emphasis added.)[3]

It is undisputed that appellant's statements to Mazzilli were not electronically recorded and are not in compliance with art. 38.22, § 3(a)(1). By its plain language, art. 38.22, § 3(e) requires strict compliance with all portions of § 3(a), which sets out when a defendant's custodial statements may and may not be used as evidence against him or her. Because appellant's statements were not recorded in accordance with the dictates of art. 38.22, it would appear that they were inadmissible at appellant's trial. However, the statements were admitted on the basis of the Full Faith and Credit Clause, and the Court of Appeals affirmed on that basis. *Davidson*, 977 S.W.2d at 712.

Art. IV, § 1 of the United States Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." The non-judicial statements admitted in this case clearly are not themselves public acts, records or judicial proceedings. Instead, the question here is whether the statements are admissible at trial in Texas because they would be admissible in a Montana court under Montana law. Because the laws of Montana and Texas conflict as to the ad-

missibility of the statements, we must decide which law prevails and, thereby, whether it was error to admit the statements at trial.

■■■ On its face, the Full Faith and Credit Clause requires that "full faith and credit" be given by each state to the "public acts" (i.e., laws) of every other state. However, as the Court of Appeals noted, "there is no constitutional requirement that a State yield to the law and statutes of another state in all circumstances." *Davidson*, 977 S.W.2d at 710. As the Supreme Court has stated, "A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own." *Alaska Packers Ass'n v. Indus. Accident Comm'n of California*, 294 U.S. 532, 547, 55 S.Ct. 518, 523, 79 L.Ed. 1044 (1935).

■■■ Generally, a weighing of various conflicting interests determines whether the law of another state is applicable in the forum state. *See Davidson*, 977 S.W.2d at 710 (citing *Sun Oil Co. v. Wortman*, 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) and *Hughes v. Fetter*, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951)). One of the basic tenets of conflict-of-law resolution, however, is that the law of the forum in which the judicial proceeding is held determines the admissibility of evidence. *Davis v. State*, 645 S.W.2d 288, 291–292 & n. 5 (Tex.Crim.App.1983); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 138 (1971); David D. Siegel, CONFLICTS IN A NUTSHELL § 63 (2 nd ed.1994); DICEY AND MORRIS ON THE CONFLICT OF LAWS 1099 (J.H.C. Morris ed., 9 th ed.1973); George Wilfred Stumberg, PRINCIPLES OF CONFLICT OF LAWS 140 (3 rd ed.1963).

Considerations of efficiency and convenience require that questions relating to the admissibility of evidence, whether

---

**3.** The exceptions in art. 38.22, § 3(e) are not    relevant to the instant case.

oral or otherwise, should usually be determined by the local law of the forum. The trial judge must make most evidentiary decisions with dispatch if the trial is to proceed with reasonable celerity. The judge should therefore, as a general rule, apply the local law of his own state. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 138 cmt. a; *see also* Eugene F. Scoles and Peter Hay, CONFLICT OF LAWS § 12.10 (1984).

▮▮▮ Art. 38.22 is located in the Code of Criminal Procedure and deals with an evidentiary matter: when oral statements by an accused, made as result of custodial interrogation, are admissible against the accused in a criminal proceeding. The plain language of art. 38.22, § 3(e) requires strict compliance with all portions of § 3(a), which sets out the specific conditions which must be satisfied before such statements may be used as evidence against a defendant. In *Tigner v. State*, 928 S.W.2d 540, 546 (Tex.Crim.App.1996), we held that this language applied to § 3(a)(5), and required that we "strictly advance [the Legislature's] purpose to declare inadmissible all custodial statements not provided to defense counsel with ample time to effectively challenge their admissibility." Art. 38.22, § 3(a)(1) makes no distinction between in-state and out-of-state oral statements, made as a result of custodial interrogation, which are not in compliance with its dictates. Thus, we are similarly required to advance the Legislature's purpose to declare inadmissible all such statements unless an electronic recording is made of them. Therefore, we hold that the Court of Appeals erred in concluding that the testimony regarding oral statements made by appellant as a result of custodial interrogation was admissible against appellant.[4]

---

4. In holding that appellant's statements were properly admitted at trial, the Court of Appeals found that its holding was supported by, *inter alia, Alvarado v. State*, 853 S.W.2d 17 (Tex.Crim.App.1993). *Davidson*, 977 S.W.2d at 711–712. However, in *Alvarado* we held that a defendant's confession, which had been obtained by Mexican police who were not acting as agents for the Texas police and who had failed to comply with the requirements of *Miranda*, was not excludable under either TEX. CODE CRIM. PROC. art. 38.23 or the federal exclusionary rule. *Alvarado*, 853 S.W.2d at 24–25. We specifically stated that "[n]o question of whether the admission of the confession violates any of the provisions of article 38.22 of the Texas Code of Criminal Procedure is presented in this appeal." *Id.* at 18–19. We also noted that we considered art. 38.22 an evidentiary rule, rather than an exclusionary rule. *Id.* at 19 n. 3. Therefore, *Alvarado* has no applicability to the instant case.

Presiding Judge McCormick argues that art. 38.22 is a "substantive exclusionary rule." *Post*, at (op. at 185–186) (McCormick, P.J., dissenting). However, an analytical comparison with art. 38.23 shows that art. 38.22 is a procedural evidentiary rule, rather than a substantive rule. Art. 38.23 provides in relevant part:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

While both arts. 38.22 and 38.23 govern when certain evidence shall and shall not be admitted at trial, they do so in very different terms. Art. 38.23 mandates exclusion of evidence when it has been obtained in contravention of legal or constitutional rights. As such, it is properly identified as substantive in nature, as it is an attempt to provide a remedy for a violation of those rights. *See, e.g., Jackson v. State*, 968 S.W.2d 495, 499 (Tex.App.—Texarkana 1998, pet. ref'd) (laws that invoke art. 38.23 exclusionary rule are those that protect rights and interests of citizens from infringement by the State); *Johnson v. State*, 864 S.W.2d 708, 724 (Tex.App.—Dallas 1993) (with art. 38.23, legislature provided legal remedy for suspect whose statutory or constitutional rights had been violated), *aff'd*, 912 S.W.2d 227 (Tex.Crim.App.1995); *Imo v. State*, 826 S.W.2d 714, 714 (Tex.App.—Texarkana 1992, no pet.) (art. 38.23 is more protective of individual rights than federal constitution).

In contrast, art. 38.22 merely prescribes the various requirements that must be satisfied before a statement made by an accused as a result of custodial interrogation will be admitted against him/her at trial. That such requirements are not met does not mean that the statement was necessarily obtained as a result of any legal or constitutional violation, and art. 38.22 mandates exclusion of such

The judgment of the Court of Appeals is reversed, and the cause is remanded for a harm analysis.

McCORMICK, P.J., filed a dissenting opinion, in which KELLER and KEASLER, J.J., joined.

MANSFIELD, J., filed a dissenting opinion.

McCORMICK, P.J., delivered a dissenting opinion.

I respectfully dissent. There is no question that appellant is guilty of sexually assaulting his two minor daughters in Texas. While Texas authorities were investigating these offenses in Texas, appellant fled the jurisdiction. Appellant later made voluntary and reliable incriminating oral statements about these offenses to a federal officer in Montana. With the exception of an outstanding Texas arrest warrant for appellant that apparently caused this federal officer to detain and question appellant in Montana, Texas had no connection whatsoever to the making of these oral statements. These oral statements are not excludable under Montana or federal law. They are, however, excludable under Texas law solely because they were not electronically recorded as required by Article 38.22, Section 3(a), V.A.C.C.P. Do Montana and federal law ("nonforum law") or Texas law ("forum law") apply to the excludability of these statements in a Texas prosecution?

The Full Faith and Credit Clause does not command Texas to apply nonforum law primarily because there is nothing "arbitrary nor fundamentally unfair" about applying forum law.[1] This does not mean Texas is constitutionally prohibited from applying nonforum law, and choice-of-law principles serve as an analytical guide in deciding which law to apply.[2] It also is necessary to consider under choice-of-law and comity principles whether nonforum law offends the public policy of Texas or the general interests of Texas citizens.[3]

## CHOICE OF LAW

In deciding forum law applies, the linchpin of the analysis in the Court's opinion is its affixation of a "procedural" or "evidentiary" label to Article 38.22, Section 3(a). Having quickly affixed this "procedural" or "evidentiary" label to Article 38.22, Section 3(a), it becomes a simple matter for the Court to apply the choice-of-law rule that forum law "determines the admissibility of evidence."[4] Affixing a procedural or evi-

statements by its own terms and without reference to art. 38.23. As such, it more closely resembles our various rules of evidence which determine the admissibility of contents of writings, recordings, and photographs. *See* TEX.R. EVID. 1001–1009. Thus, art. 38.22 is more appropriately characterized as a procedural evidentiary rule.

1. See generally *Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 2122–24, 100 L.Ed.2d 743 (1988); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 2978, 86 L.Ed.2d 628 (1985) (Full Faith and Credit Clause provides "modest restrictions" on application of forum law).

2. See *Sun Oil,* 108 S.Ct. at 2122 fn. 1 (Full Faith and Credit Clause did not radically change the principles of conflicts law; it made these principles enforceable as a matter of constitutional command rather than leaving enforcement to the forum's view of comity); *Phillips Petroleum,* 105 S.Ct. at 2977–78 ("a particular set of facts giving rise to litiga-

tion could justify, constitutionally, the application of more than one jurisdiction's laws" with the Due Process Clause and the Full Faith and Credit Clause providing only "modest restrictions" on the application of forum law); David D. Siegel, *Conflicts In A Nutshell,* Section 56 at p. 153–55 (2d ed.1994) ("if two states have interests in the case, and even strong policies underlying the different rules of law they would apply to an issue, and one will have to give way, the decision of which one that will is the forum's, unhindered by the full faith and credit clause").

3. See *Safety–Kleen v. Canadian Universal Ins.,* 258 Ill.App.3d 298, 197 Ill.Dec. 472, 631 N.E.2d 475, 483 (1994) (judicial comity is the principle whereby courts of one jurisdiction may give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect).

4. *Davidson v. State,* 23 S.W.2d 183, 185 (Tex.Cr.App. delivered this date); see David D. Siegel, *Conflicts In A Nutshell,* Section 63

dentiary label to Article 38.22, Section 3(a), actually avoids the "choice of law process" because this process is devised for "substantive" issues when both the forum and the nonforum "have had substantial contacts with the transaction and the parties."[5]

Some rules are easily characterized as "wholly procedural" such as manner of service, mode of trial and evidentiary "housekeeping devices."[6] The "characterization" process for most other rules, however, is not so easy and requires more than simply the affixation of a "procedural" label. For example,

> "The statute of limitations just treated is among the best examples of how misleading it can be to try to resolve an issue by affixing a label to it—what the conflict of laws calls 'characterization.' A simple-minded version of this labeling phenomenon is to conclude quickly that the statute of limitations is 'procedural' and that a forum will therefore apply its own statute of limitations automatically, to foreign and domestic claims alike.

Since the choice of law process is devised for 'substantive' issues, goes this notion, the process would be avoided by simply affixing a 'procedural' label to an issue. Only a brain in a total state of rest would trust such reasoning."[7]

Most rules of evidence that are "merely housekeeping devices designed to direct the court along the best route to the truth" are properly characterized as "strictly procedural."[8] There are, however, various exceptions to this.[9] Sometimes "a rule phrased in terms of evidence may in fact be a rule of substantive law."[10]

Article 38.22, Section 3(a), is one of those legislative substantive rules "phrased in terms of evidence." It is more than a "housekeeping" device designed to promote "efficiency and convenience" during the course of the trial.[11] Article 38.22, Section 3(a), sets out various substantive preconditions to the admissibility of oral statements that fall within its provisions. Article 38.22, Section 3(a), is a legislative

---

at p. 186 (2d ed.1994) ("most rules of evidence are strictly procedural and come from forum law alone"); see also Restatement (Second) Of Conflicts of Laws, Section 138 at p. 384–85(1971).

5. See David Siegel, Conflicts In A Nutshell, Section 5 at p. 5–6 (whenever two or more states have a connection to a case and an issue arises as to which their respective laws differ, a choice of law must be made with the law-choosing process undertaken only for "substantive" issues; as far as procedure is concerned, each forum follows its own), and Section 55 at p. 149 (the uncomplicated exemplar of a choice of law situation is a case where both the forum and another state "have had substantial contacts with the transaction and the parties").

6. See David D. Siegel, Conflicts In A Nutshell, Section 62 at p. 185, and Section 63 at p. 186.

7. David D. Siegel, Conflicts In A Nutshell, Section 62 at p. 183.

8. See David D. Siegel, Conflicts In A Nutshell, Section 63 at p. 186; Restatement (Second)

Of Conflicts of Laws, Section 138 at p. 384 (1971).

9. See David D. Siegel, Conflicts In A Nutshell, Section 62 at p. 184 (if purpose of a given rule, otherwise safely treatable as one of "procedure" is not one of bookkeeping or mechanics but rather one whose very design is to decide between life and death, its application in a conflicts setting "needs thinking, not labeling"), and Section 63 at p. 186–87 (some presumably "housekeeping" evidentiary rules "can take a turn for the substantive"); Restatement (Second) Of Conflicts of Laws, Section 138 at p. 384, and Section 139 at p. 385 (evidentiary privileges against the disclosure of confidential communications are "substantive").

10. Restatement (Second) Of Conflicts of Laws, Section 138, comment c at p. 384.

11. See David D. Siegel, Conflicts In A Nutshell, Section 63 at p. 186; Restatement (Second) Of Conflicts of Laws, Section 138 at p. 384 (considerations of "efficiency and convenience" require that questions relating to admissibility of evidence should usually be determined by forum law).

substantive exclusionary rule.[12]

With Article 38.22, Section 3(a), properly characterized as a substantive rule, the choice of which law to apply is an easy one. The relevant transaction here in making this choice is not the Texas prosecution but the making of the oral statements in Montana. Texas had no "substantial contacts" with this transaction or the parties to it.[13] Choice-of-law principles, therefore, require Texas to apply Montana and federal law to the excludability of appellant's oral statements unless doing so would violate Texas public policy.[14]

## PUBLIC POLICY CONSIDERATIONS

The "public policy" issue should not be "carelessly applied."[15] The Court's opinion decides that admitting appellant's oral statements would violate legislative public policy to declare inadmissible the type of statements in this case "unless an electronic recording is made of them."[16] This, however, is tantamount to deciding that nonforum law violates Texas public policy because nonforum law does not have a forum counterpart. This misapplies the "public policy" analysis.

"It is impossible to define a state's 'public policy.' Presumably it is the entirety of the state's law, whether embodied in statutes, rules, decisions, ordinances, or any other equivalent compilation. If that is its definition, then it could be argued that any foreign claim or rule of law not having a precise counterpart in forum law would violate forum 'policy,' and that would mean in turn that a state would 'never enforce different laws of another state' (citation omitted). That is of course not the case.

"A foreign law need not be shown to have a local counterpart before it is recognized and applied. Before a foreign claim or law is rejected on the ground that it violates forum 'public policy,' the forum feeling about the matter must be shown to be a deep one, to touch on something the forum deems to involve moral values rather than just a different way of doing things."[17]

And it is seriously doubtful that the legislative policy of Article 38.22, Section 3(a), is to require "electronic recording" of oral statements just for the sake of electronically recording them. The obvious

---

**12.** See David D. Siegel, *Conflicts In A Nutshell,* Section 55 at p. 150 (a legislature seldom considers choice-of-law issues because legislators "are almost always preoccupied with substantive rights and issues"); but see *Alvarado v. State,* 853 S.W.2d 17, 19 fn. 3 (Tex.Cr.App.1993) (stating in *dicta* that Article 38.22, V.A.C.C.P., is viewed "as an evidentiary rule not an exclusionary rule").

**13.** See David D. Siegel, *Conflicts In A Nutshell,* Section 55 at p. 149 ("uncomplicated exemplar of a choice of law situation is a case" in which both the forum and the nonforum "have had substantial contacts with the transaction and the parties"); cf. *Phillips Petroleum Co.,* 105 S.Ct. at 2976–80 (Kansas' application of its substantive forum law violated Full Faith and Credit Clause because of its lack of "significant contact or significant aggregation of contacts" to the parties and the transactions at issue); *Alvarado,* 853 S.W.2d at 22 (finding it significant that Texas authorities played no part in obtaining the defendant's written confession in Mexico).

**14.** See *Safety–Kleen,* 197 Ill.Dec. 472, 631 N.E.2d at 483; cf. *Phillips Petroleum,* 105

S.Ct. at 2978 (Full Faith and Credit Clause required forum to respect the laws and judgments of other states "subject to the forum's own interests in furthering its public policy").

**15.** See David D. Siegel, *Conflicts In A Nutshell,* Section 55 at p. 153:

"There is also the threshold question, when foreign law is relevant, of how a party gets the court to apply it. And there is the important 'public policy' matter, which, carelessly applied, could easily become an excuse for a forum to refuse to apply any foreign law at all. That has not come to pass, and only judicial reins on this wild 'public policy' creature account for that."

**16.** The Court's own characterization of this public policy appears to be a substantive one which undermines the Court's claim that Article 38.22, Section 3(a), is "procedural" or "evidentiary."

**17.** David D. Siegel, *Conflicts In A Nutshell,* Section 57 at p. 166–67.

policy advanced here is to assure reliability and voluntariness of the statements. Those purposes have been accomplished here. It, therefore, does not violate Texas public policy or some "fundamental principle of justice" to admit appellant's oral statements.[18] Nor would admitting these statements adversely affect the general interests of Texas citizens.

I respectfully dissent.

KELLER and KEASLER, JJ., join this dissent.

MANSFIELD, J., delivered the dissenting opinion.

The question presented here is the following: Does Texas Code of Criminal Procedure Article 38.22 Section 3(a) apply to statements taken from persons suspected of criminal offenses committed in Texas while those persons are the subject of custodial interrogation conducted outside of Texas by non-Texas law enforcement personnel?

It is undisputed appellant was detained in Montana by a United States Customs special agent. It is also undisputed the special agent informed appellant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nothing in the record indicates appellant's statement was taken in a manner violative of his rights either under the federal constitution or the Montana Constitution. Accordingly, the trial court ruled appellant's statement was admissible even though it was not electronically recorded as required by Article 38.22 Section 3(a). The court of appeals affirmed. *Davidson v. State*, 977 S.W.2d 708 (Tex.App.-Fort Worth 1998).

Texas Code of Criminal Procedure Article 38.22 provides, in relevant part:

*Sec. 3(a)* No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement.

Section 3(e) further provides:

The courts of this State shall strictly construe Subsection 3(a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the State.

This Court, and the courts of most jurisdictions, have held, in a situation analogous to that presented here, that the requisites of *Miranda v. Arizona* do not generally extend to statements obtained in foreign countries by officials of those countries. *Alvarado v. State*, 853 S.W.2d 17, 24 (Tex. Crim.App.1993); *United States v. Heller*, 625 F.2d 594 (5th Cir.1980); *United States v. Wolf*, 813 F.2d 970, 972 (9th Cir.1987); *United States v. Welch*, 455 F.2d 211, 212 (2nd Cir.1972); *State v. Wright*, 745 P.2d 447, 451 (Utah 1987). Common to the holdings in these cases is the principle that the main purpose of *Miranda*—to deter interrogations by *American* police officials that violate the rights of persons in their custody granted by the United States Constitution—simply does not apply to foreign countries to which the United States Constitution does not apply.[1]

---

**18.** David D. Siegel, *Conflicts In A Nutshell*, Section 57 at p. 167 (setting out the "classic formulation" of the "public policy" standard: nonforum law does not violate forum public policy unless it violates "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal").

**1.** There are two exceptions to the general rule that *Miranda v. Arizona* does not apply to statements obtained by foreign officials:

(i) the circumstances surrounding the confession shock the conscience of an American court. See *Heller, supra*, at 599; *Alvarado, supra*, at 21; *United States v. Fernandez–Caro*, 677 F.Supp. 893, 894–895 (S.D.Tex.1987);

(ii) where American officials assist in the interrogation or the foreign officials are acting as agents for their U.S. counterparts. See *Alvarado, supra*, at 22; *Heller, supra*, at 599; *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir.1976).

Similarly, it is clear that the statutory protections provided by Article 38.22 Section 3(a) apply only to statements taken by Texas police officers from persons in custody in Texas, or elsewhere. This conclusion is consistent with the principles of statutory construction set forth by this Court in *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991). We are required to construe a statute in accordance with the plain meaning of its literal text unless the language of the statute is ambiguous or the plain meaning leads to absurd results. *Boykin, supra,* at 785. We are not free to substitute our judgment for that of the Legislature particularly where, as here, the Legislature has instructed us that the provisions of Article 38.22 Section 3 are to be construed strictly.[2]

It would be highly unlikely the Legislature, in enacting Article 38.22 Section 3, intended for its provisions to apply to statements taken by non-Texas law enforcement officials outside of Texas. As an evidentiary rule, Article 38.22 is intended to exclude, as evidence, statements taken by Texas law enforcement officers in violation of its requisites. To hold this statute to apply to non-Texas police officers over whom the Texas Legislature has absolutely no authority would be an absurd result. Furthermore, it would not make sense to exclude statements taken by non-Texas police officers in compliance with the laws of their jurisdictions and federal constitutional requirements as they could not reasonably be expected to be aware of Article 38.22.

Turning to the present case, there is no question the statement taken by the United States Customs agent in Montana was taken in compliance with both the United States and Montana Constitutions. In my opinion, the statement is therefore admissible in Texas. I would hold, therefore, that Article 38.22 Section 3 does not apply to a statement taken in a manner consistent with the requirements of the law of that jurisdiction (and federal constitutional law where applicable) from an individual in custody outside of Texas by non-Texas law enforcement officials *unless* said officials were acting as agents of Texas law enforcement officials or Texas law enforcement officials were involved in the taking of the statement.[3]

I respectfully dissent.

---

**2.** Consistent with the Legislature's intent, we have strictly construed the requirements of Article 38.22. See, e.g., *Tigner v. State,* 928 S.W.2d 540, 543 (Tex.Crim.App.1996); *Ragan v. State,* 642 S.W.2d 489 (Tex.Crim.App.1982).

**3.** There is no evidence the Customs agent was acting on behalf of Texas authorities or that Texas law enforcement personnel participated in his interrogation of appellant.