

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1189-15

**MAYRA FLORES, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

**WALKER, J., announced the judgment of the Court and delivered an opinion in which HERVEY, ALCALA, and RICHARDSON, JJ. joined. YEARY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined. KEEL, J., concurred. NEWELL, J., did not participate.**

### O P I N I O N

In this appeal, we determine whether the court of appeals erred by affirming the trial court's

admission of a defendant's audio recordings that were incomplete and inaccurately represented a

conversation between a peace officer and a defendant. We have determined that they were

inadmissible pursuant to article 38.22, section 3(a)(3) of the Code of Criminal Procedure. *See* TEX.

CODE CRIM. PROC. art. 38.22 § 3(a)(3).

In this case, the two recordings comprise a single interview and they are an inaccurate representation of the conversation between the peace officers and appellant due to the absence of over thirty minutes of the interview. We acknowledge that there may be instances when a court may properly decide that a recording is accurate despite the absence of a portion of a conversation. Based on the facts of this case and the absence of approximately thirty minutes of the recordings, the recordings were inaccurate. We conclude that it was error to admit them into evidence at Appellant's trial. We therefore reverse the judgment of the court of appeals and remand the cause to the court of appeals for a harm analysis.

## I. Background

### The Facts

Appellant, Mayra Flores, lived with her boyfriend, Francisco (Frank) Castellanos.[1] They had a rocky relationship that included domestic violence by both parties. Castellanos, who was a member of MS13, a known violent street gang, was unemployed and spent his days drinking.

On the day that Castellanos died, there was a family gathering for his birthday. By the time trouble started late in the evening, both Castellanos and Appellant were drunk. After they began fighting, Appellant's sister left, taking Appellant's children with her. Appellant and Castellanos were the only people in the apartment at the time that the fight escalated and Appellant stabbed Castellanos to death. The jury convicted Appellant of the murder, and the trial court sentenced her to twenty-five years in prison.

---

[1] The trial record, including the indictment, consistently spells the complainant's name as "Castellanos." The opinion of the court of appeals spells that name as "Castellano." We will use the spelling that is used in the trial record.

At trial, counsel for Appellant objected to the admission of the recordings because they were incomplete. The recordings at issue are State's Exhibits 88 (first recording: 36:28) and 98 (second recording: 53:38). The speakers are Sgt. Wayne Kuhlman (K), Sgt. Ken Hunter (H), and Appellant (A). Sgt. Kuhlman testified that he recorded the interrogation on a digital recorder. The first recording begins with Sgt. Kuhlman stating that it is Sunday, October 3, 2010, at approximately 7:40 a.m. and ends abruptly while Sgt. Hunter was asking a question.

(Text on first recording at 36:08)

(H): I want to go back to . . . you said that you put him in jail for rape. When was it that you had kids for him? You have two kids.

(A): After. After. Like he isn't–

(H): (simultaneous) So it was after.

(A): –supposed to see me. Yeah. He isn't supposed to see me–

(H): And that's why–

[recording ends at 36:28, or, based on Sgt. Kuhlman's statement on the recording, approximately 8:16 a.m.]

11 R.R. State's Ex. 88 at 36:08. It is clear that the first recording is cut off in the middle of a sentence. The second recording begins with Sgt. Kuhlman again stating the time and date and reading the *Miranda* warnings.

(K): O.K. Today, again, is Sunday, October 3, 2010. It's now 8:30 a.m. At about 8:02 a.m., we were in here and we were talkin' and my battery got really low on my recorder so we stopped, you had a restroom break, everybody got a little something to drink. All that. Now we're going to start up talkin' again, and again, I'm gonna, I'm gonna give you your statutory warnings, and they are: –and you need to answer me out loud after each one, O.K.?

11 R.R. State's Ex. 98 at 0:00. Sgt. Kuhlman then recited the *Miranda* warnings, Appellant affirmed

that she understood her rights, and the interrogation continued.

> (K): O.K. Where we left off at, where did we leave off? What were you saying? Do you remember?
>
> (A): (no response)
>
> (inaudible)
>
> (K): Sorry. Go ahead.
>
> (H): I think that I had a question. And I asked her, and we were discussin' the fact that, uh, your boyfriend, uh, was supposed to not be with you and y'all continued to have contact and that's–and that was after the alleged rape that he was–that y'all had kids together?
>
> (A): Yeah.

11 R.R. State's Ex. 98 at 1:09.

The second recording continues with the interrogation. After several more minutes of questioning, "the audio shuts down and it cuts off," again in the middle of a sentence. 5 R.R. 87. The recording itself reflects that it continues through the 53:38 minute point, although the audio stops at the 35:38 minute point. Thus, it seems clear that eighteen minutes of the interrogation are not on the second recording. Therefore, neither recording includes the final minutes of the conversations. Apparently, there are approximately fourteen minutes of the interview missing from the end of the first recording and eighteen minutes of the interview missing from the end of the second recording.

Outside the jury's presence, after or during a lunch recess, counsel for Appellant urged the trial court to not allow the State to present the digital recordings of Appellant's interrogation because the recordings were incomplete. Specifically, Appellant's attorney argued:

> In any event, our primary issue is that there is a, for lack of a better

phraseology, a Rose Mary Woods problem. We have, as you recall from the Watergate hearings–before Josh was born, there was Watergate; and we had an eighteen-minute gap. In this tape of this recorded statement, for whatever reason the tape of Mayra Flores' statement is missing.

So, we have a section or segment of her statement that the jury will not hear; because either advertent or inadvertent, it was destroyed or is missing. So what would happen is if you offer the statement, you would only be offering a part of her statement.

Now, they can do that, as long as the defense has an opportunity to offer the rest of the statement. Because we know that the rest of the statement can never be offered, because it's not available to us, we don't know what it says. And as a result of that, it is unfair and extremely prejudicial to us and the defense to not have the complete statement.

As a matter of fact, there may be even more exculpatory evidence in the missing part of the statement. And quite frankly, we're concerned that it was intentionally removed just to create the impression that is non-favorable to the defendant.

So, for that reason, we don't have an opportunity for optional completeness of the statement. So, we are asking the Court, since we don't have the whole statement, it's impossible for us to have the whole statement, it would be wrong to admit a partial statement.

5 R.R. 84-86.

In response, counsel for the State argued:

So, what happens is at the beginning of the recording she's read her statutory warnings. She waives those warnings and decides to talk to police. At some point in time, around thirty-plus minutes, the audio recording shuts off because of a malfunction in the device.

The–there is a second tape that starts back up, and I'm going to be admitting both statements as one large statement. What happens in the second tape is the officer states that at some point in time the video recorder shut down and that that part of the statement has been lost, or not recorded, for lack of a better term. And they again read her her statutory warnings so that they are back in compliance with the statutory regulations as they are in Article 38.21.

So we have complied with the article, as far as giving her her statutory warnings and whatnot. So what I think the defense is saying is that because they lost a portion of it, that they should be able to admit it; but it doesn't exist.

And this officer won't be able to, and I'm not going to ask him to, allude to what was said in the interim; because that would be improper. I'm not going to say, what did she say in that twenty minutes before you found out that the tape was shut down? I'm just going to be putting in the whole statement as it exists.

At the end of the second statement, if you will, if you want to say it's two different statements, although it's one, the video–or the audio shuts down and it cuts off, and that's the end. And if you talk to the officer, the officer will tell you, I believe that we continued to speak more, but the video recording was so bad that we just didn't start back up.

So, there is no part of the defendant's statement that exists that's not going to be played. There is [sic] some statements that she made that were not recorded, therefore, not admissible. And because they're not admissible, this officer will not be testifying to those things. So that's clear.

The fact that the audio recording shut down does not make it inadmissible in trial. It goes to the weight of the statement, but not the admissibility. So on cross-examination the defense will be able to say, your device shut down; isn't that true? You could have missed parts that looked good for the defendant. And if they do that line of questioning, I'm not going to be objecting. And the jury can give what weight they want to the fact that there could be missing parts that completely exculpate the defendant.

5 R.R. 86-88.

**Trial Testimony**

In his trial testimony, Sgt. Kuhlman stated that, because of a technical problem with transferring the original digital recording to a new archiving system, the remaining fourteen minutes and thirty-five seconds were not transferred and are unrecoverable.[2] The trial testimony explaining the reason for the missing part of the recordings conflicts with the State's two other explanations for the missing conversation. Counsel for the State represented to the trial court both (1) that "the video recorder shut down and[,] that that part of the statement has been lost, or not recorded," and (2) that the officers consciously chose not to record the final section of the interrogation because of sound

---

[2] [Prosecutor]: "[W]e all heard the tape there cut off as she was in mid-sentence. So, was the tape cut off on purpose or anything like that?"

Sgt. Kuhlman: "No. It was a technical issue that we have over at the building that we office in. The automated recording system, when you–there was a time period where we were transferring the files from, like, recorders to our automated recording system. And it would not copy. There was some something in the wiring, and it cut off at–it didn't copy the end of that recording."

[Prosecutor]: "So it's not that we're not playing it; we just don't have it in existence."

Sgt. Kuhlman: "It does not exist."

5 R.R. 98.

quality. The prosecutor stated, "And if you talk to the officer, the officer will tell you, I believe that we continued to speak more, but the video recording was so bad that we just didn't start back up." Accordingly, the trial testimony confirms the earlier discussion reflecting that the parties knew that portions of the recordings of Appellant's statement were missing.

## Standard of Review

In *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), we held that reviewing courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. Mixed questions of law and fact, also known as application of law to fact questions, are reviewed *de novo* unless the resolution of those ultimate questions turns on credibility and demeanor. *Id.* In *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012), we held that the court of appeals should view video evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings that support its ruling, but if the video evidence does not support the trial court's conclusion, then the court of appeals should reverse. When there are factual disputes regarding testimony or the contents of a recording, the trial court's findings of historical fact are afforded almost total deference. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012). However, when evidence is conclusive, such as with indisputable visual evidence, then any trial court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling. *Id.*

Although there are disputes about how and why the recordings that were admitted into evidence were missing portions of appellant's recorded interview, it is undisputed that those portions

are approximately thirty missing minutes that were "lost, or not recorded." 5 R.R. 86. As discussed above, we are able to review the recordings and determine that indeed there are approximately thirty missing minutes. Accordingly, even though a deferential review is appropriate, in the face of indisputable audio evidence we may disregard findings which are contrary to that indisputable evidence even when viewing the record in a light most favorable to the trial court's ruling.

### The Appeal

Appellant's sole issue on appeal was that the trial court abused its discretion when it admitted into evidence two audio recordings that were made during her custodial interrogations by Harris County Sheriff's deputies. Appellant's complaint on appeal was that parts of her interrogation were not recorded when the recording device stopped for several minutes and that the unrecorded sections were exculpatory. She specifically alleged that Texas Code of Criminal Procedure article 38.22, section 3(a)(3) requires that "the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered." She asserted that article 38.22 is a procedural evidentiary rule that prescribes the various requirements that must be satisfied before a statement made by an accused as a result of custodial interrogation will be admitted into evidence at trial and that strict compliance with all portions of section 3(a) is required. She also asserted that even though the recording device had stopped recording, the two deputies continued to interrogate her and during that period she and the deputies discussed the events surrounding Castellanos's death, and she made exculpatory statements that were not repeated in either of the two recordings.

Unpersuaded by appellant's arguments, the court of appeals affirmed the judgment of the trial court. *Flores v. State*, No. 01-14-00579-CR, 2015 Tex. App. LEXIS 7960 (Tex. App.–Houston [1st

Dist.] July 30, 2015) (mem. op. on reh'g, not designated for publication). The court of appeals specifically held that Appellant had "failed to establish how the trial court abused its discretion by admitting the recording into the record." *Id.* at *6.

## II. Preservation of Error

Appellant's claim on direct appeal, which challenged the trial court's admission into evidence of the recordings of her statement, comports with her trial objections, which objected to the admission of that very same evidence. Both at trial and on appeal, the admissibility of the recordings of Appellant's statement was challenged, based upon the absence of some of the article 38.22, section 3 requirements.

To preserve error for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and complied with the requirement of the rules of evidence or the rules of appellate procedure; and the trial court ruled on the request, objection, or motion; or the trial court refused to rule on the request, objection, or motion, and the complaining party objected to the refusal. TEX. R. APP. P. 33.1(a). No hyper-technical or formalistic use of words or phrases is required in order for an objection to preserve an error, but rather the objecting party must let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in position to do something about it. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). "The point of error on appeal must comport with the objection made at trial." *Id.* "In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of

the objection and the shared understanding of the parties at the time." *Id.*

The parties' comments surrounding Appellant's trial objections reflect that they and the trial court understood that Appellant was seeking to exclude the recorded evidence of her interview, as "it would be wrong to admit a partial [recorded] statement," and it was "unfair and extremely prejudicial to us and the defense to not have the complete statement." 5 R.R. 85. During that discussion before the trial court, the prosecutor had referenced "Article 38.21," apparently mis-speaking in referring to article 38.22 and argued compliance with "the statutory requirements of admitting a particular statement," including giving the statutory warnings of article 38.22 and arguing that he was offering the complete statement as it existed. 5 R.R. 86, 87. Appellant's trial objection was adequate to make the trial judge aware of the basis of her objection, and, because the trial judge was made aware of the basis of Appellant's objections, error was preserved.

Appellant's claim on direct appeal, which challenged the trial court's admission into evidence of the recordings of her statement, comports with her trial objections, which objected to the admission of that very same evidence. Both at trial and on appeal, the admissibility of the recordings of Appellant's statement was challenged, based upon the absence of some of the article 38.22, section 3 requirements. Since subsection (e) of article 38.22, section 3, reflects that all of the subsection (a) requirements must have been satisfied before determining that the statement is admissible, if any one of the requirements is not met, the statement is not admissible. TEX. CODE CRIM. PROC. art. 38.22 § 3(e). Since Appellant's trial objection corresponded with the claim on direct appeal, the claim was not forfeited and appellate review is appropriate.

### III. Analysis

Having concluded that Appellant preserved error, we now address the merits of her claim.

Appellant complains that the court of appeals erred in affirming the trial court's decision to admit the recordings into evidence. She insists that the recordings were not admissible because they failed to meet article 38.22, section 3's requirements.

Recorded oral statements must satisfy the requirements of article 38.22, section 3(a) if they are to be admissible:

> Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
> (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;
> (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;
> (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;
> (4) all voices on the recording are identified; and
> (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX. CODE CRIM. PROC. art. 38.22 § 3(a). Section 3(e) provides that we (the courts of this state) shall *strictly construe* subsection (a) and may not interpret subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the State, with two inapplicable exceptions. *Id.* § 3(e). We have held that strict compliance with this portion of article 38.22 which deals with electronic recordings, section 3, is required. *Nonn v. State*, 117 S.W.3d 874, 879 (Tex. Crim. App. 2003); *Nonn v. State*, 41 S.W.3d 677, 679 (Tex. Crim. App. 2001). We have pointed out that the plain language of article 38.22, section 3(e) requires strict compliance with all portions of section 3(a). *Davidson v. State*, 25 S.W.3d 183, 186 (Tex. Crim. App. 2000). "Strict compliance with all portions of Section 3(a) is required." *Woods v. State*, 152 S.W.3d 105, 116 (Tex. Crim. App.

2004). Accordingly, all four of section 3(a)(3)'s requirements, that (1) the recording device was capable of making an accurate recording; (2) the operator was competent; (3) the recording is accurate; *and* (4) the recording has not been altered, must be met for a recorded statement to be admissible. TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(3). Thus, the failure of any one of section 3(a)(3)'s requirements renders a statement inadmissible. Pursuant to section 3(a), a recording of an accused's custodial oral statement is not admissible against the accused unless, among other things, the recording is accurate and has not been altered. *Id.* We note that accurate is defined as: "In exact conformity to fact: errorless" and "Conforming closely to a standard." WEBSTER'S II NEW COLLEGE DICTIONARY 8 (1999). Likewise, inaccurate is defined as: "Not accurate" and "Incorrect or mistaken." WEBSTER'S II NEW COLLEGE DICTIONARY 558 (1999). Also, there is nothing in article 38.22 which indicates that an inaccurate or altered recording would be admissible as long as the inaccuracy or alteration was not intentionally done or done with some kind of nefarious purpose. If the Legislature had intended that result, it would have written the statute to do so, and it would be inappropriate for this Court to do so.

At the outset, we determine that the two recordings comprise a single interview, and therefore, the admission of one recording was dependent on the admission of the other. Depending upon the particular facts of the case, a subsequent interview may constitute a continuation of an earlier interview, and under those circumstances, both interviews would be a single interview. *See Bible v. State*, 162 S.W.3d 234, 242 (Tex. Crim. App. 2005) ("Under these circumstances, we find that the two sessions were part of a single interview for the purpose of Article 38.22 and *Miranda*."). Facts to consider include: (1) the passage of time, (2) whether the interrogation was conducted by a different person, (3) whether the interrogation related to a different offense, and (4) whether the

officer asked the defendant if he had received any earlier warnings, whether he remembered those warnings, and whether he wished to waive or invoke them. *Bible*, 162 S.W.3d at 242 (discussing *Jones v. State*, 119 S.W.3d 766, 773 n.13 (Tex. Crim. App. 2003)). Based on our review of the end of the first recording and the beginning of the second, we find that there was a continuity of the discussion, and, while we are dealing with two separate discs containing the recordings, the two discs memorialize only one recorded interrogation.[3] Although there is a fourteen minute gap between the two recordings, and Appellant was given the *Miranda* warnings at the start of the second disc, these circumstances are inadequate in this case to divide one interrogation into two separate recorded interrogations for the purpose of an article 38.22 analysis. Under the facts of this case, the two recordings may not be considered as two separate interviews, and if either of the recorded discs is inadmissible under article 38.22, section 3(a)(3), both are inadmissible.

Having determined that the two recordings comprise a single interview, we must determine whether either of the recordings were made or offered into evidence in contravention of any of the article 38.22, section 3(a)(3) requirements. We disagree with the court of appeals's determination that the second recording reflected the complete conversation and that there was no evidence that the conversation continued for any length of time after the recording cut off. As noted above, the attorneys spoke in court of continued unrecorded conversation between Appellant and the officers. The prosecutor represented to the trial court that an officer stated that the video recorder shut down and that some part of the statement "has been lost, or not recorded," thus evidencing that some of

---

[3] Indeed, arguing in favor of admitting the evidence during the trial, the State considered both statements to be one: "there is a second tape that starts back up, and I'm going to be admitting both statements as one large statement. . . . I'm just going to be putting in the whole statement as it exists. . . . if you want to say it's two different statements, although it's one[.]" 5 R.R. 86-87.

the conversation was "lost, or not recorded." 5 R.R. 86. The prosecutor also stated that "[t]here is some statements that she [Appellant] made that were not recorded[.]" *Id.* at 87. Also, the recorded disc of the second part of the interview is time stamped and clearly shows that the conversation stops mid-sentence; there were eighteen minutes that appear to have been recorded originally that are no longer recorded. While there was a dispute as to what was said during the unavailable missing minutes, it was undisputed that some statements were made during the interview that were "lost, or not recorded." Admitting into evidence, over Appellant's objection, the recordings, which did not contain those "lost, or not recorded" minutes, was in violation of article 38.22.

## Materiality

Article 38.22 does not explicitly include a requirement that, when a trial judge admits evidence that should have been excluded under a strict reading of 38.22, the alleged error is subject to a materiality requirement. The dissenting opinion seems to suggest that such a materiality requirement should exist. While this appears to be a novel question, we need not answer that question in this case because of the fact that the alleged error in this case *was* material. The way the prosecution dealt with the missing portions of the recorded interview in trial effectually generated materiality. The prosecution emphatically used the missing portion of the interview to demean Appellant's assertion of self defense by trying to convince the jury that Appellant fabricated the entire self defense scenario for trial purposes by asserting that Appellant's recorded interview does not contain any mention of the self defense scenario.

During his testimony, Sgt. Kuhlman was questioned about what he did or did not do at the crime scene, but neither side questioned him about his interrogation of Appellant other than the State's questions about why portions of the recordings were missing. As he had represented to the

trial court during the discussion where Appellant sought to exclude the recordings, counsel for the State did not try to ascertain from Sgt. Kuhlman what Appellant said to him during the missing minutes.

However, during the cross-examination of Appellant, counsel for the State repeatedly challenged Appellant about what counsel for the State perceived as changes and omissions in her statements about Castellanos's death. In spite of his assertions that no part of the interrogation was missing, counsel for the State repeatedly referred to "the part that wasn't recorded."

> Q. Why didn't you tell [the detectives] about the choking that [your daughter] Jasmine saw?
>
> A. I mean, it happened.
>
> Q. Why didn't you tell them about that?
>
> A. I did.

7 R.R. 94.

> A. . . . So y'all don't have all the complete everything what I was saying. Y'all just want to put whatever is for you, I mean; but I did told [sic] them that I had called Mario, you know, this ex.
>
> Q. All right. Well, suffice it, it's always on that part that was left off. That's your testimony?

7 R.R. 133.

> Q. So it probably happened in the bedroom after everybody left, right, before you started crawling to the kitchen?
>
> A. Um, I don't remember; because we were both hitting each other.
>
> Q. Okay. Well, because you were able to give a very detailed statement to this jury, one that we didn't hear on the tape to officers . . . .

7 R.R. 142-43.

Q. Okay. And so, if there was ever a time to tell the truth about why you had to kill Francisco, that was the time; and you chose not to do it, right?

A. I told them I had been–what happened.

Q. Why was your story in court so much different from your story on the tape?

A. That wasn't–

Q. For instance, do you recall–do you remember listening to your statement here in court?

A. Yes.

Q. Not a single time did you ever say that Frank was saying he was going to kill you.

A. I did. That was not where it was recorded.

Q. Oh, okay.

A. And I did told [sic] them.

Q. Okay. So, you told them that Frank was yelling he was going to kill you, bitch; but that was on the part that wasn't recorded?

A. I did. I told them that.

Q. And that's the same time when you told them about the ex-boyfriend, so all of the stuff you told us in court happens to be on the part that wasn't recorded?

A. Yes.

Q. When they start the recording back up, why not say it then?

A. Because they were just asking me questions like, you did this, you did this.

Q. Because, in fact, in the recording what we hear you say is that what you were scared of was the look in his eyes, not what he was saying. And then in court we hear that it was what he was saying and not what he looked like.

A. I told the deputies what he was telling me. If it wasn't recorded, then—

8 R.R. 5-7.

Q. Okay. And why didn't you tell–on the tape when you were talking to officers, why didn't you tell them about these chokings and things like that?

A. I did told [sic] them that.

Q. When did you tell them this?

A. I told them. That's why my part of the tape is missing.

Q. Okay.

A. Because I remember telling them.

Q. So that's on the part that's missing, as well?

A. Yes.

8 R.R. 11.

The emphasis on the missing section continued in the State's closing argument:

We've heard it all. We heard it all to the first thing she told Wheeler when she was lying. We heard in her statement when she was lying. And four years later she comes up with some new stuff. Go listen to that statement. Not a single time do we hear, I'm going to fucking kill you bitch. That was not for trial. That one was new.

This has been an evolving, changing story from this woman; because she can't tell the truth. I don't think she's physically able to tell the truth, to be quite honest.

9 R.R. 31.

It's not true. None of it is true.

9 R.R. 33.

And this whole, I'm going to kill you, bitch, was created at trial.

9 R.R. 41.

In this case, the State failed to preserve evidence and then used its absence to undermine

Appellant's trial testimony about the events that ended in Castellanos's death. Assuming, without deciding, that Appellant testified truthfully about what she told the detectives in the missing thirty minutes, support for her testimony had been lost by the State, which then used the loss to accuse Appellant of lying and making things up. Appellant's explanations were minimized by counsel for the State, both during her testimony and in closing argument to the jury. Appellant could not prove that she had made a prior statement that was consistent with her trial testimony because any such statements had been lost through no fault of her own. By repeatedly referring to what might or might not have been said during the missing thirty minutes, the State improperly used the missing minutes as a sword against Appellant. The error in this case was material.

We hold that the absence of approximately thirty minutes of recordings, coupled with the evidence indicating that the conversation between Appellant and the officers contained multiple statements that were either lost or not recorded, renders the recordings inaccurate and thus inadmissible under article 38.22, section 3(a)(3). We, therefore, sustain Appellant's ground in her petition for discretionary review that asserted that the court of appeals erred by failing to hold that the recording was inaccurate and inadmissible. Because all of the requirements of article 38.22, section 3(a)(3) must be shown for recordings to be admissible, we need not reach the alternative arguments presented by Appellant in her petition for review. Accordingly, we dismiss, as improvidently granted, Appellant's alternative arguments that the recording device used was not capable of making an accurate recording, and that the court of appeals misapplied this Court's holding in *Weatherred*.[4]

---

[4] In *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000), we held that an appellate court must review the trial court's evidentiary ruling in light of what was before the trial court at the time that ruling was made.

**IV. Conclusion**

The recorded statement of Appellant, which was made as a result of custodial interrogation, was not admissible because at least one of the requirements of article 38.22, section 3(a) was not met due to the absence of approximately thirty minutes of recordings, which, based on the facts of this case, made them inaccurate.[5] We sustain Appellant's ground for review, reverse the judgment of the court of appeals, and remand this cause to that court to conduct a harm analysis.

Delivered: May 23, 2018
Do not publish

---

[5] We emphasize that our holding is based upon and limited to the specific facts of this particular case. We certainly can envision other cases involving recordings with minimal missing portions in which such recordings properly may be held to be accurate and admissible.